**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JACKILYN BUNNELL,

Plaintiff,

v.

WILLIAM BEAUMONT HOSPITAL,

Defendant.

Case No. 2:22-cv-12414

Honorable Brandy R. McMillion

---

# DEFENDANT'S MOTION TO ENFORCE SETTLEMENT

Defendant William Beaumont Hospital ("Beaumont"), through its attorneys, states as follows for its Motion to Enforce Settlement. In accordance with L.R. 7.1, Beaumont sought concurrence with the relief sought in this Motion. Plaintiff's counsel was not able to concur in the Motion.[1]

1. On June 11, 2026, this Court conducted a settlement conference. Both parties appeared for the conference, as did their respective attorneys.

2. After hours of negotiation, the parties were able to reach a settlement, which included all of the material terms. One of those terms was that Plaintiff would provide Beaumont with a full release of all claims.

[1] Beaumont sought concurrence from plaintiff's counsel the day after plaintiff's counsel asked Beaumont for concurrence in plaintiff's counsel's motion to withdraw as counsel for Plaintiff. It is unlikely plaintiff's counsel had the ability to concur in this Motion, even if they wanted to.

3. At the conclusion of the settlement conference, both parties acknowledged, on the record, that a full and final settlement had been reached. The parties also agreed that they would prepare a settlement agreement, through their respective attorneys, memorializing the terms of the settlement.

4. Although Beaumont has held up its end of the bargain, Plaintiff has not.

5. On June 15, 2026, Plaintiff filed an Emergency Notice of Client Settlement Dispute and Evidence of Modification, wherein she accused her attorneys of mispresenting her portion of the settlement proceeds. That filing was withdrawn on June 26, 2026, with the understanding that the settlement would proceed.

6. As such, on July 9, 2026, defense counsel sent plaintiff's counsel a proposed settlement agreement, which memorialized the terms of the settlement that was reached in Court on June 11, 2026.

7. Although the agreement contained the exact allocation of the settlement payment that was negotiated and agreed to by Plaintiff, Plaintiff subsequently attempted to alter the terms of the settlement by insisting on a structured settlement. Beaumont refused to agree to Plaintiff's after-the-fact request on the basis that a structured settlement was never mentioned during the settlement conference, much less agreed to by Beaumont.

8. On September 21, 2026, this Court conducted a status conference for the purpose of discussing Plaintiff's insistence on a structured settlement. After

acknowledging that a structured settlement was never part of the settlement, this Court directed the parties to continue to negotiate. This Court also set October 5, 2026 as the deadline for filing a motion to enforce the settlement if an agreement could not be reached regarding the structured settlement.

9. While Plaintiff eventually capitulated on the structured settlement, she again attempted to alter the material terms of the settlement by insisting that the scope of the release be narrowed to "employment-related claims" only and that the release contain a "carveout" for medical malpractice claims.

10. Beaumont refused to agree to limit the scope of the release. As such, on September 24, 2026, defense counsel informed plaintiff's counsel that unless Plaintiff was willing to honor the terms of the deal that was reached in Court, which included her agreement to provide a full release of all claims, Beaumont would file a motion to enforce the settlement. Defense counsel also informed plaintiff's counsel that Beaumont would be asking for its attorney's fees in the event it was required to file a motion to enforce.

11. On September 28, 2026, Plaintiff filed an Emergency Motion to Enforce the Employment Scope of the Resolution and to Strike Defendant's Unauthorized Pediatric Malpractice and Assault Waivers.[2] Although the Court

---

[2] In her Emergency Motion, Plaintiff revealed the settlement amount and attached an unredacted copy of the Settlement Agreement. While this constitutes a breach of the confidentiality provision of the Settlement Agreement, Beaumont remains

struck Plaintiff's Emergency Motion on September 29, 2026, the Motion confirms that Plaintiff is, once again, attempting to alter the terms of settlement by insisting that (i) the scope of the release be limited to "workplace, FMLA, and employment-related capacities," and (ii) "all corporate medical malpractice, personal tort, and third-party Medicaid or TEFRA indemnity boilerplate text" be stricken from the Agreement.

12. There is no basis for Plaintiff's insistence that the scope of the release be limited in any way. During the settlement conference, it was very clear that Plaintiff would be required to provide Beaumont with a full release of all claims in exchange for the consideration provided to her by Beaumont. No limitations or carveouts to the release were discussed with Beaumont, and Beaumont certainly did not agree to limit the scope of the release in any fashion. Plaintiff's position is specious.

13. Plaintiff should be required to execute a settlement agreement containing a full release of claims, along with the other terms agreed to by the parties during the settlement conference with this Court.

14. Plaintiff should also be required to pay Beaumont's attorney's fees associated with this Motion, as she has repeatedly and needlessly added to the

---

willing to move forward with the settlement. However, Beaumont asks the Court to redact any references to the settlement amount in Plaintiff's Emergency Motion.

expense of the settlement through her baseless insistence on renegotiating the terms of the settlement.

WHEREFORE, Defendant requests that this Court grant its Motion and enter an order requiring Plaintiff to execute the Settlement Agreement, Release of All Claims, Covenant Not to Sue and Confidentiality Agreement attached hereto as Exhibit 1[3] and to pay Beaumont's attorney's fees associated with this Motion, along with any other relief this Court deems just.

Respectfully Submitted,

Clark Hill PLC,

*/s/ David M. Cessante*
David M. Cessante (P58796)
Stephanie V. Romeo (P83079)
Attorneys for Defendant
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
313-965-8300

Date: September 30, 2026

---

[3] Due to the confidential nature of the settlement, the amount of the settlement payment has been redacted from the Settlement Agreement, as well as from any other exhibits attached to this Motion. Beaumont can provide the Court with an unredacted copy of the Agreement for *in camera* inspection if necessary.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JACKILYN BUNNELL,

Plaintiff,

v.

WILLIAM BEAUMONT HOSPITAL,

Defendant.

Case No. 2:22-cv-12414

Honorable Brandy R. McMillion

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE SETTLEMENT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........ ii
CONCISE STATEMENT OF THE ISSUE PRESENTED ........ iii
CONTROLLING OR MOST APPROPRIATE AUTHORITY ........ iv
INTRODUCTION ........ 1
FACTS ........ 2
LEGAL ARGUMENT ........ 8
I. Legal Standards for Enforcing a Settlement ........ 8
II. This Court Should Enforce the Parties' Settlement ........ 9
CONCLUSION ........ 12

# INDEX OF AUTHORITIES

## Cases

*Bamerilease Capital Corp. v. Nearburg*,
958 F.2d 150 (6th Cir. 1992)....8, 9

*Brock v. Scheuner Corp.*,
841 F.2d 151 (6th Cir. 1988)....9

*Kamalnath v. Mercy Mem'l Hosp. Corp.*,
487 N.W.2d 499 (Mich. Ct. App. 1992)....10

*McCormack v. City of Westland*,
2018 WL 3619593, at *6 (E.D. Mich. July 30, 2018).... iv, 8, 9, 10, 12

*RE/MAX Int’l, Inc. v. Realty One, Inc.*,
271 F.3d 633 (6th Cir. 2001).... iv, 9

## CONCISE STATEMENT OF THE ISSUE PRESENTED

WHETHER THIS COURT SHOULD ENFORCE THE SETTLEMENT THAT WAS AGREED TO BY THE PARTIES DURING THE JUNE 11, 2026 SETTLEMENT CONFERENCE AND REQUIRE PLAINTIFF TO EXECUTE A SETTLEMENT AGREEMENT AND RELEASE CONSISTENT WITH THE AGREED UPON TERMS.

Defendant answers: Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*McCormack v. City of Westland*, 2018 WL 3619593 (E.D. Mich. July 30, 2018)

*RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633 (6th Cir. 2001)

## INTRODUCTION

On June 11, 2026, this Court conducted a settlement conference in this matter. After hours of negotiation, this Court was able to broker a settlement between the parties. At the conclusion of the settlement conference, the Court had both parties acknowledge, *on the record*, that they had reached a settlement and that settlement included all materials terms. The Court also noted on the record that the terms of the settlement would later be memorialized in a settlement agreement.

Despite the foregoing, Plaintiff refuses to sign a settlement agreement, even though it contains all of the material terms that she agreed to in court. Instead, Plaintiff has made multiple attempts to undermine the settlement by accusing her attorneys of "financial misrepresentation" and insisting on a structured settlement. When both of these attempts failed, Plaintiff concocted another argument designed to upend the settlement. Namely, that she only agreed to limit the release to employment-related claims and that the release included a carveout for medical malpractice claims. This argument is specious.

At no time during the settlement conference was there any discussion about a limited release. Beaumont could not have agreed to a release that was limited to employment-related claims and that contained medical malpractice carveouts because this type of release was never discussed. And even if it was, Beaumont never would have agreed to settle with Plaintiff in exchange for a limited release. As

this Court is fully aware, the only release that was discussed during the settlement conference and the only release that Plaintiff agreed to was a full release of all claims.

Plaintiff should be required to execute a settlement agreement containing a full release of claims, along with the other terms agreed to by the parties during the settlement conference with this Court. Plaintiff should also be required to pay Beaumont's attorney's fees associated with this Motion.

## FACTS

### The Parties Reach a Settlement During a Conference With the Court

On June 11, 2026, this Court conducted a settlement conference. Both parties appeared for the conference, as did their respective attorneys. After hours of negotiation, the parties were able to reach a settlement, which included the following material terms: (i) a monetary payment to Plaintiff, 10% of which was allocated to alleged lost wages and 90% of which was allocated to alleged noneconomic damages; (ii) a full release of all claims by Plaintiff; (iii) a covenant not to sue by Plaintiff; (iv) an agreement that Plaintiff would keep the terms of the settlement confidential; (v) an agreement that Plaintiff would not be eligible for or seek re-employment with Beaumont and its affiliated entities; (vi) an agreement that Plaintiff would dismiss her lawsuit with prejudice; (vii) a provision that Beaumont was not admitting any liability to Plaintiff; (viii) a mutual non-disparagement clause,

which, on behalf of Beaumont, was limited to Lauren Burgett, Tracy Zeiter, and Human Resources personnel; and (ix) a generic letter of reference from Beaumont stating that Plaintiff separated from employment due to COVID-19, was in good standing, and there was not an equivalent position available.

At the conclusion of the settlement conference, both parties acknowledged, on the record, that a full and final settlement had been reached. The parties also agreed that they would prepare a settlement agreement, through their respective attorneys, memorializing the terms of the settlement.

The following day, June 12, 2026, defense counsel sent an email to plaintiff's counsel confirming the terms of the settlement. *[Ex. 2]* Defense counsel also stated that they would prepare a settlement agreement consistent with these terms. *[Id.]*

**<u>Plaintiff Files Her First "Emergency Motion" Regarding the Settlement</u>**

On June 15, 2026, Plaintiff filed an Emergency Notice of Client Settlement Dispute and Evidence of Modification. *[ECF No. 46]* In her Motion, Plaintiff accused her attorneys of mispresenting the portion of the settlement proceeds that she would net after attorney's fees. *[Id.]* Plaintiff requested that the Court stay all proceedings and "schedule an emergency status conference to address this matter." *[Id.]* That filing was withdrawn on June 26, 2026. *[ECF No. 46]* Following the withdrawal, plaintiff's counsel informed defense counsel that Plaintiff's "concerns

have been resolved. We are back on the track we were on before, please provide a copy of the proposed settlement agreement." *[Ex. 3]*

**Defense Counsel Sends Plaintiff's Counsel a Proposed Settlement Agreement**

On July 9, 2026, defense counsel sent plaintiff's counsel an email with a proposed settlement agreement, which memorialized the terms of the settlement that was reached in Court on June 11, 2026.[4] *[Ex. 3]* In his email, defense counsel noted that Beaumont was still in process of drafting the reference letter. *[Id.]* Defense counsel also asked plaintiff's counsel to provide the settlement payment allocation. *[Id.]*

**Plaintiff Insists on a Structured Settlement**

Nearly a month later, on August 5, 2026, plaintiff's counsel sent defense counsel a redlined version of the settlement agreement. *[Ex. 4]* In his email, plaintiff's counsel acknowledged that "[t]here are some substantial changes to the payment terms" and went on to note that Plaintiff "has contracted with a company to make this a structured settlement." *[Id.]* This was the first time a structured settlement was broached with Beaumont.

[4] As stated above, the amount of the settlement payment has been redacted from all exhibits due to the confidential nature of the settlement.

On August 13, 2026, defense counsel sent an email to plaintiff's counsel advising that Beaumont was not willing to agree to the structured settlement. *[Ex. 5]* Defense counsel went on to explain:

> During the settlement conference, there was significant discussion with Judge McMillion about the allocation of the settlement payment. Not once was the topic of making a payment to MetLife or any other third party mentioned. The only topic of discussion was how much of the settlement payment would be allocated to wages and non-wages. As a result of those discussions, Corewell agreed that 10% of Bunnell's portion of the settlement payment would be allocated to wages and 90% would be allocated to non-wages, along with a separate payment to your firm. There was never any discussion, much less an agreement, about Corewell making a payment to a third-party. The goal of the settlement from Corewell's perspective is to be forever done with Bunnell. Entering into an arrangement with MetLife to make future payments to Bunnell does not provide any level of certainty that Bunnell will not attempt to assert future claims against Corewell in connection with the periodic payments. This arrangement would also require Corewell to enter into a separate agreement with MetLife, which it is not prepared to do.
>
> Please advise if Bunnell is willing to move forward with the deal that was reached during the settlement conference. If not, we'll have no choice but to file a motion to enforce the settlement. I'm hoping we don't have to go that route. *[Id.]*

After several back-and-forth communications between the attorneys, it became clear that Plaintiff would not relent on her after-the-fact insistence for a structured settlement. As such, on August 27, 2026, defense counsel sent an email to the Court advising of the stalemate and requesting a conference with the Court to discuss how best to proceed. *[Ex. 6]*

**This Court Conducts a Status Conference**

On September 21, 2026, this Court conducted a status conference for the purpose of discussing Plaintiff's insistence on a structured settlement. After acknowledging that a structured settlement was never part of the settlement, this Court directed the parties to continue to negotiate. This Court also set October 5, 2026 as the deadline for filing a motion to enforce the settlement if an agreement could not be reached regarding the structured settlement.

**Plaintiff Demands that the Scope of the Release Be Narrowed**

On September 23, 2026, plaintiff's counsel advised defense counsel that Plaintiff capitulated on the structured settlement. However, plaintiff's counsel also advised defense counsel, for the first time, that Plaintiff was insisting that "the waiver which was agreed to is limited to those claims which were part of the lawsuit only, and furthermore that the waiver must explicitly have a carve-out for medical malpractice claims related to her 2020 childbirth for herself and her daughter." *[Ex. 7]* Plaintiff's counsel further advised that "[t]hese are essential terms, and Mrs. Bunnell will not sign off on a settlement agreement that does not have language to this effect." *[Id.]*

The following day, September 24, 2026, defense counsel responded to plaintiff's counsel's email by advising that there was no basis for Plaintiff's after-

the-fact attempt to narrow the scope of the release. *[Ex. 7]* Specifically, defense counsel stated:

> It was very clear during the settlement conference that the release would include any and all claims up to the date Ms. Bunnell signs the settlement agreement. At no time during the conference was there any discussion about limiting the scope of the release. Nor was there any discussion about carveouts. As such, our client vehemently disagrees with Ms. Bunnell's assertion that the release/waiver is limited to the claims that were raised in the lawsuit. Our client also is not willing to include a carve-out for medical malpractice claims.
>
> Unless Ms. Bunnell is willing to honor the terms of the deal that was reached in court, which included her agreement to provide a full release of all claims, we will file a motion to enforce the settlement. We will also ask the court to order Ms. Bunnell to pay Corewell's attorney's fees associated with the motion, as we believe her position is baseless. Please let us know as soon as possible whether Ms. Bunnell remains steadfast in her position. *[Id.]*

**<u>Plaintiff Files Her Second "Emergency" Motion</u>**

On September 28, 2026, Plaintiff filed an Emergency Motion to Enforce the Employment Scope of the Resolution and to Strike Defendant's Unauthorized Pediatric Malpractice and Assault Waivers. *[ECF No. 50]* In her Motion, Plaintiff requested that the "Court restrict the scope of the final release strictly to workplace, FMLA, and employment-related capacities." *[Id.]* Plaintiff also requested that "the Court explicitly strike all corporate medical malpractice, personal tort, and third-party Medicaid or TEFRA indemnity boilerplate text from Sections 1, 2, 4, 10, and 12 of the proposed agreement." *[Id.]* Plaintiff made this request, despite being

advised by her own attorneys, multiple times, that her request to narrow the scope of the release was “frivolous” and was inconsistent with the agreement that was reached during the June 11 settlement conference. *[Id.]* Plaintiff’s Emergency Motion was stricken by the Court. *[ECF No. 51]* This Motion ensued.

## LEGAL ARGUMENT

### I. LEGAL STANDARDS FOR ENFORCING A SETTLEMENT

“‘It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.’” *McCormack v. City of Westland*, 2018 WL 3619593, at *6 (E.D. Mich. July 30, 2018), quoting *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). “‘A federal court possesses this power even if that agreement has not been reduced to writing.’” *McCormack*, 2018 WL 3619593 at *6, quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). *See also*, *RE/MAX Int’l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) (“The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.”) “When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.” *RE/MAX Int'l*, 271 F.3d at 646 (6th Cir. 2001), citing *Brock*, 841 F.2d at 154.

"Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Intern*, 271 F.3d at 645-646, citing *Brock*, 841 F.2d at 154. "'Whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally.'" *McCormack*, 2018 WL 3619593 at *6, quoting *Bamerilease Capital Corp.*, 958 F.2d at 152. "Under Michigan law, '[i]n order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *McCormack*, 2018 WL 3619593 at *6, quoting *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). If there is a meeting of the minds, the settlement will be enforced unless it resulted from fraud or mutual mistake, "unconscionable advantage," or coercion or duress. *McCormack*, 2018 WL 3619593 at *6.

## II. THIS COURT SHOULD ENFORCE THE PARTIES' SETTLEMENT

There is no doubt the parties formed a valid agreement during the June 11, 2026 settlement conference. As this Court is well aware, the Court and its staff worked tirelessly to negotiate a settlement that was acceptable to both parties. This included the Court engaging in hours of shuttle diplomacy, which entailed communicating and discussing multiple offers and counteroffers with the parties. At all times during this process, both parties were represented by counsel, so there is no

credible argument that the parties did not understand the terms of the settlement or the offers that were communicated by the Court.

At the conclusion of the negotiations, the Court confirmed that the parties had agreed to all of the material terms and had the parties acknowledge this on the record. The material terms included not only the settlement amount that would be paid to Plaintiff, but the percentage of the payment that would be allocated to wages and non-wages, which was a hotly contested issue during negotiations. The material terms also included a full release of all claims by Plaintiff, a covenant not to sue by Plaintiff, a confidentiality provision, a no re-hire provision, a no admission of liability provision, a mutual non-disparagement clause, which included very specific terms, and Beaumont's agreement to provide Plaintiff with a generic letter of reference. Of course, Plaintiff also agreed to dismiss her lawsuit with prejudice. Clearly, the parties reached a meeting of the minds as to all material terms of the settlement.

Despite the foregoing, Plaintiff has done everything in her power to undermine the settlement she unquestionably agreed to by taking specious positions. Plaintiff first attempted to derail the settlement by accusing her attorneys of "financial misrepresentation." When that did not work, she insisted on a structured settlement, which was never discussed during the settlement conference, much less agreed to by Beaumont. After it became clear that argument would not fly with the

Court, Plaintiff claimed that she only agreed to a limited release, with a carveout for medical malpractice claims - - a position that Plaintiff's own attorneys have acknowledged is "frivolous." *[ECF No. 50]* It is clear that Plaintiff either has buyer's remorse and/or is attempting to renegotiate the settlement terms she agreed to during the settlement conference with this Court. Either way, there is no basis for Plaintiff's position.

This conclusion is supported by the court's decision in *McCormack*, *supra*. Like here, the *McCormack* court conducted a settlement conference with the parties and their respective attorneys. 2018 WL 3619593 at 1. At the conclusion of the conference, the parties reached an agreement to settle, which they placed on the record. *Id.* They also agreed that the terms of the settlement would later be memorialized by way of settlement agreements. *Id.* Although the settlement agreements accurately reflected the terms of the parties' agreed upon settlement, the plaintiff refused to sign the agreements. *Id.* As such, the defendants filed motions to enforce the settlement. The court granted both motions on the basis that the parties formed a valid contract during the settlement conference. *Id.* at 6. The court also noted that the plaintiff was represented by counsel during the settlement conference, so there was no coercion or duress. *Id.* at 7. The court ultimately concluded that "Plaintiff's refusal to sign the settlement agreements is based upon a garden-variety case of buyer's remorse, not upon some legally-valid objection to the terms of the

agreements or to the settlement process itself." *Id.* Therefore, the court required "Plaintiff to take the steps necessary to execute the settlement," which included executing the final draft of the settlement agreement that had been circulated between the parties. *Id.*

The same result applies here. The parties fully agreed on all material terms during the settlement conference. This included Plaintiff providing Beaumont with a full release of all claims. At no time during the settlement conference was there any discussion about limiting the scope of the release. Nor was there any discussion about carving out any claims. As Plaintiff's own attorneys acknowledged in their communications with Plaintiff, she was fully aware of the scope of the release and agreed to provide Beaumont with a full release of claims. Plaintiff's position is frivolous. *[See ECF No. 50]* This Court should enforce the parties' settlement and require Plaintiff to execute the Settlement Agreement attached hereto as Exhibit 1, which sets forth the material terms of the settlement and was negotiated between counsel for the parties.

## **CONCLUSION**

WHEREFORE, Defendant requests that this Court grant its Motion and enter an order requiring Plaintiff to execute the Settlement Agreement, Release of All Claims, Covenant Not to Sue and Confidentiality Agreement attached hereto as

Exhibit 1 and to pay Beaumont's attorney's fees associated with this Motion, along with any other relief this Court deems just.

Respectfully Submitted,

*/s/ David M. Cessante*
David M. Cessante (P58796)
Stephanie V. Romeo (P83079)
Attorneys for Defendant
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226

Date: September 30, 2026