(43)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**JACKILYN BUNNELL,**
Plaintiff,
v.
**COREWELL HEALTH, f/k/a BEAUMONT HEALTH,**
Defendant.

FILED
SEP 30 2026
CLERK'S OFFICE
DETROIT

Case No.: 2:22-cv-12414
Hon. Brandy R. McMillion

**PLAINTIFF'S EMERGENCY RESPONSE IN OPPOSITION TO COUNSEL'S MOTION TO WITHDRAW AND REQUEST FOR STATUS CONFERENCE**

Plaintiff Jackilyn Bunnell, proceeding *pro se* to protect her minor child and the structural integrity of this litigation, respectfully requests this Court DENY Miller Cohen, PLC's Motion to Withdraw and stay the current October 5, 2026 dismissal deadline pending an emergency status conference, stating as follows:

1. **Procedural Context:** On September 28, 2026, Plaintiff attempted to bring a severe contractual overreach regarding non-employment waivers to the Court's attention via an *Emergency Motion to Enforce*. This Court procedurally struck that motion on September 29, 2026, to enforce the local rule prohibiting hybrid representation.

2. **Immediate Attorney Abandonment:** Capitalizing instantly on the striking of Plaintiff's *pro se* filing, Plaintiff's counsel filed a Motion to Withdraw on September 29, 2026. Counsel seeks to abandon Plaintiff a mere five (5) days before the Court's strict October 5, 2026 case-terminating deadline. Deserting a client on the eve of a critical deadline constitutes severe, irreversible structural prejudice.

3. **Severe Dispute Over Unauthorized Terms:** Counsel's assertion that the parties settled all "essential terms" is fundamentally false. Counsel is actively attempting to coerce Plaintiff into executing an unnegotiated, sweeping "global medical waiver" that releases separate, non-employment pediatric medical malpractice and physical assault claims belonging exclusively to Plaintiff's disabled minor child.

4. **Incorporation of Prior Factual Proofs:** To demonstrate the immediate threat to a minor child, Plaintiff attaches her previously struck motion and accompanying evidentiary email logs as Exhibit 1. As documented therein, Plaintiff cannot sign the revised settlement text because it strips her child's mandatory statutory TEFRA Medicaid Third-

Party Liability (TPL) subrogation rights, exposing the family to federal benefit termination and severe personal liability under federal "payer of last resort" mandates.

5. **Irreconcilable Conflict and Written Admissions:** Plaintiff also attaches as Exhibit 2 an email from Associate Counsel Ryan Paree received on September 30, 2026. In this transmission, active counsel openly admits to Plaintiff that the firm will completely refuse to file an objection or protect Plaintiff's interests should the Defendant attempt to enforce the overbroad, non-employment child medical waivers. This is an explicit breach of fiduciary duty and absolute loyalty.

6. **Plaintiff Remains Fully Cooperative:** Plaintiff has explicitly notified counsel in writing that she remains 100% cooperative, ready, and willing to execute a workplace-only release immediately to fulfill the $195,000.00 oral resolution reached at mediation. The breakdown is caused solely by counsel's failure to protect a minor child from defense overreach.

7. **Request for Judicial Intervention:** Plaintiff respectfully requests that this Honorable Court deny or stay any withdrawal of counsel, pause the October 5th case-closing deadline, and order an immediate telephonic or in-person status conference to address this breakdown.

**VERIFICATION DECLARATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements contained in the foregoing Response are true, accurate, and correct to the best of my personal knowledge and belief.

**Dated: September 30, 2026**

**Respectfully submitted,**
**Mrs. Jackilyn Bunnell, *Plaintiff Pro Se***

**INDEX OF EXHIBITS**

- **Exhibit 1:** Plaintiff's Emergency Motion to Enforce and Accompanying Factual Email Proofs (Pages 1–36).
- **Exhibit 2:** Email from Ryan Paree dated September 30, 2026, explicitly stating counsel will refuse to object to Defendant's overbroad waiver enforcement.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, I served a true and accurate copy of the foregoing Plaintiff's Response via electronic mail transmission upon defense counsel of record (dcessante@clarkhill.com; sromeo@clarkhill.com) and Plaintiff's legal counsel of record (kflynn@millercohen.com; rparee@millercohen.com).

Dated: September 30, 2026

Respectfully submitted,

Mrs. Jackilyn Bunnell, *Plaintiff Pro Se*
j.vbunnell@gmail.com | 517-914-4478
25242 Hunter Lane, Flat Rock, MI 48134

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**JACKILYN BUNNELL,**
Plaintiff,
v.
**COREWELL HEALTH, f/k/a BEAUMONT HEALTH,**
Defendant.

Case No.: 2:22-cv-12414
Hon. Brandy R. McMillion

**PLAINTIFF'S EMERGENCY MOTION TO ENFORCE THE EMPLOYMENT SCOPE OF THE RESOLUTION AND TO STRIKE DEFENDANT'S UNAUTHORIZED PEDIATRIC MALPRACTICE AND ASSAULT WAIVERS**

Plaintiff Jackilyn Bunnell, proceeding *pro se* solely for the purpose of preserving the integrity of the record and protecting her minor child, respectfully moves this Court to enforce the specific employment terms of the settlement framework placed on the record on June 11th, and to strike the Defendant's unauthorized, overbroad boilerplate text that attempts to globally extinguish unrelated personal medical malpractice, negligence, and personal tort liabilities regarding Plaintiff's minor child. In support of this Motion, Plaintiff states:

1. **Jurisdiction & Core Scope:** This action was brought strictly under statutory employment law, specifically alleging violations of the Family and Medical Leave Act (FMLA) and pregnancy discrimination arising out of Plaintiff's employment capacity with Defendant.

2. **The June 11th Record and Plaintiff's Absolute Cooperation:** On June 11th, the parties appeared before the Court and placed a binding oral settlement framework on the record in the gross amount of $195,000.00 to resolve the active employment dispute. Plaintiff remains 100% cooperative, entirely ready, and explicitly willing to execute a 90/10 split lump-sum, employment-restricted settlement contract today to fulfill that workplace resolution.

3. **Deceptive Structural and Tax Allocations:** In direct violation of the June 11th record and the Defendant's subsequent June 12th written summary, Section 1.2 of the Defendant's proposed contract attempts to reclassify the payment structures in a manner that creates an undue tax liability for the Plaintiff. While Plaintiff fully agrees to the agreed-upon attorney fee allocation under Section 1.1, the current structural layout of Section 1.2 broadly labels the entire gross recovery as taxable "employment-related claims," failing to properly insulate the Plaintiff's net recovery from severe IRS matching errors and tax exposure.

4. **Irreconcilable Conflict with Legal Counsel:** On September 24, 2026, Plaintiff's legal counsel of record, Miller Cohen, PLC, explicitly refused to advocate for Plaintiff's explicit contract directives, aligned with the Defendant's new overbroad medical waiver demands, and issued an ultimatum threatening a total withdrawal from representation unless Plaintiff capitulated and signed away her personal rights and her minor child's legal safety.

5. **Complete Client Abandonment and Intervening Silence:** Plaintiff responded to counsel on the morning of September 25, 2026, extending a formal administrative window until 5:00 PM that evening to produce missing historical file records and clarify their intent regarding their ongoing threat of withdrawal unless Plaintiff capitulated to the global corporate release. Instead of executing instructions or communicating a professional path forward, Plaintiff's legal representatives have gone completely silent, failing to respond or provide guidance on Friday or over the entire weekend leading into this final settlement week, actively forcing Plaintiff to step forward *pro se* to protect the integrity of the court record. Compounding this emergency, the Defendant has simultaneously threatened to file an immediate Motion to Enforce and force the Plaintiff to pay their corporate legal fees if Plaintiff does not sign the expanded text.

6. **Defendant's Predatory & Unrelated Medical Overreach:** Because Plaintiff's legal counsel has abandoned communication, the Defendant is actively stalling the execution of the check by refusing to sign the paperwork unless Plaintiff contractually waives her independent adult standing as a mother to recover personal medical expenses, emotional distress, and loss of companionship arising out of a series of severe, concealed medical injury, negligence, and life safety violations sustained by her minor child at multiple Defendant facilities.

7. **The Defendant's June 12th Written Confirmation:** On Friday, June 12th—the exact day following the settlement conference—Defendant's counsel explicitly sent a formal written transmission restricting the scope of the release to *"those claims that have been pled or could have been pled up to the day she signs the settlement agreement."* Under federal pleading rules, a pediatric medical injury, an urgent care life-safety failure, and a state licensing investigation could never have been pled on an FMLA employment docket.

8. **Concealed Corporate Injuries & Violations:** The underlying patient-provider liabilities that Defendant is aggressively attempting to secretly extinguish through this employment docket involve severe, non-disclosed corporate violations across multiple Defendant facilities, including:

- **a) A Post-Operative Negligence Event:** An independent post-operative negligence event at Beaumont Hospital (Royal Oak) where Plaintiff's minor child sustained medical issues during a 3-hour MRI, the parents were completely withheld from updates, and the child was found post-op improperly sedated and unattended, resulting in a head injury on a hospital bedrail.

- **b) An Urgent Care Emergency Life Safety Breakdown:** A life-threatening emergency response failure during an active 103-to-104-degree pediatric seizure at a Defendant urgent care facility—which neurology has confirmed was a toxic reaction to Permethrin rather than a standard febrile seizure. Facility staff completely panicked, failed to locate basic oxygen equipment or a specialized pediatric mask, and stood frozen while Plaintiff had to demand an emergency ambulance be called, resulting in staff performing highly improper chest compressions on a child who was already actively breathing.

- **c) An Unlicensed Corporate Operation, Assault, and State Investigation:** Following an initial formal billing dispute reported on November 4, 2022, regarding the "Toddler Language Stimulation Group (TLSG)" program at the Beaumont Health and Wellness Center (4949 Coolidge Hwy, Royal Oak), the dispute escalated. On February 28, 2023, Senior Manager Kellie Bouren and Manager Lauren retaliated by pulling Plaintiff's speech-delayed, minor child—who suffers from severe hypotonia, low muscle tone, and wears SMO orthopedic braces—behind a locked keypad-secure door, physically seizing, dragging, and pushing her down a public hallway while she screamed and cried as it was a stranger and her language and speech was delayed. This operational assault was formally reported to Clinical Risk Specialist Brenda Dzierzawski, MSN, RN, and Patient Satisfaction Analyst Emma Goonis. Senior Director Corey Overmyer subsequently threatened to call the police on March 6, 2023, for demanding her Medicaid insurance be billed as agreed, forcing the mother to utilize local police escorts to safely enter the building for her child's regular 1:1 therapy out of fear of corporate retaliation during this active litigation for discrimination for her pregnancy. A formal state licensing investigation was initiated by our State's Childcare Licensing on March 10, 2023, revealing the facility was running an unlicensed program.

- **d) Violating Medicaid TEFRA Recovery Rights:** Because Blue Cross Complete and Medicaid fully paid for all of the minor child's medical treatments, specialized imaging, and emergency care—totaling over **$**1,500,000.00 in state-discounted expenses to date—the State of Michigan holds mandatory subrogation and third-

party liability lien recovery rights against Corewell for these operational errors. Defendant's global template forces Plaintiff to contractually certify away those recovery paths, directly risking the immediate invalidation of her child's specialized TEFRA state disability insurance, terminating her life-saving healthcare continuity, and exposing the family to catastrophic debt.

9. **Prejudicial Sabotage of Representative Standing:** Contractually forcing a global waiver of these unlitigated patient torts as a mother permanently destroys Plaintiff's legal standing to act as her minor child's guardian. Because a minor's personal injury statute of limitations is paused (tolled) until her 18th birthday under Michigan law (MCL 600.5851), her independent rights remain fully active until 2030 or later. Forcing Plaintiff to sign this global draft attaches a parental waiver to her file, making it practically impossible for the family to secure separate medical malpractice representation for the child's independent, active 2030 timeline, or any future claims for her ongoing medical needs.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an Order enforcing the settlement framework placed on the record on June 11th and written record on June 12th. Plaintiff requests that the Court restrict the scope of the final release strictly to workplace, FMLA, and employment-related capacities. Plaintiff further requests that the Court explicitly strike all corporate medical malpractice, personal tort, and third-party Medicaid or TEFRA indemnity boilerplate text from Sections 1, 2, 4, 10, and 12 of the proposed agreement.

**VERIFICATION DECLARATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements contained in the foregoing Emergency Motion are true, accurate, and correct to the best of my personal knowledge and belief.

**PLAINTIFF'S INDEX OF ATTACHED EXHIBITS**

- **EXHIBIT A_Part 1 & 2:** Plaintiff's Formal Scope Dispute Thread with Miller Cohen, P.L.C. (A 10-page unbroken email chain capturing Keith Flynn's September 24, 2026 threats to withdraw and Plaintiff's immediate written response regarding her child's tolled 2030 minor claims).
- **EXHIBIT B:** Corewell Health Patient Satisfaction Compliance Investigation Letter (Formally executed by Heidi Mykolaitis on January 30, 2023, proving that a severe, highly contested billing fraud and clinical misclassification dispute involving facility management existed months prior to mediation).

- **EXHIBIT C:** Corewell Health/Clark Hill Written Settlement Terms Summary (Sent via email by defense counsel Stephanie V. Romeo on June 12, 2026, explicitly confirming that the scope of the mediated resolution was strictly limited to claims that "could have been pled" inside this FMLA employment litigation).
- **EXHIBIT D:** Defendant's Overbroad September 2026 Proposed Settlement Agreement Draft (The unsigned corporate contract containing the unauthorized, global medical malpractice release in Section 2 and the predatory Medicaid/TEFRA third-party indemnity trap in Section 12).
- **EXHIBIT E:** Miller Cohen, P.L.C. Structural Settlement Thread (A 3-page email chain from September 22, 2026, documenting Plaintiff's explicit, pre-existing written safety instructions from June and August, alongside counsel's written admissions attempting to expand the workplace settlement to release past medical malpractice).

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I served a true and accurate copy of the foregoing Plaintiff's Emergency Motion to Enforce and accompanying Exhibits A (Part 1 and 2), B, C, D, and E, via electronic mail transmission upon the following counsel of record:

Defense Counsel for Corewell Health:
David M. Cessante (dcessante@clarkhill.com)
Stephanie V. Romeo (sromeo@clarkhill.com)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226

Plaintiff's Active Legal Counsel of Record:
Keith D. Flynn (kflynn@millercohen.com)
Ryan A. Paree (rparee@millercohen.com)
Miller Cohen, P.L.C.
7700 Second Ave, Suite 335
Detroit, MI 48202

Dated: September 28, 2026
Respectfully submitted,
Mrs. Jackilyn Bunnell, Plaintiff *Pro Se*
j.vbunnell@gmail.com
517-914-4478
25242 Hunter Lane, Flat Rock, MI 48134

# EXHIBIT

# A

Gmail

Jackilyn Bunnell <j.vbunnell@gmail.com>

# Re: FW: Bunnell/Beaumont - Supplemental Discovery Responses

1 message

**Jackilyn Bunnell** <j.vbunnell@gmail.com> Fri, Sep 25, 2026 at 7:05 AM
To: Keith Flynn <kflynn@millercohen.com>
Cc: Robert Fetter <rfetter@millercohen.com>, Richard Mack <richardmack@millercohen.com>, Ryan Paree <rparee@millercohen.com>

Dear Keith,

I am in receipt of your 7:06 PM update last night. I completely reject your characterization that my position is 'baseless'; protecting my disabled minor child's legal safety, medical continuity, and TEFRA rights from a predatory corporate waiver is a strict parental obligation. To ensure the record is absolutely clear before your 5:00 PM deadline today:

1. **Demand for Proof:** As your firm and the defense asserts I have already legally bound myself to a global release, please produce immediate physical proof of my signature or a direct verbal transcript from June 11th showing I authorized that specific scope. Furthermore, I demand a clear, written explanation detailing exactly how and when your firm came to the assessment that I agreed to release unrelated pediatric medical torts as this conflicts your August statement. This is especially urgent given that David Cessante's September 24th email explicitly states, "At no time during the conference was there any discussion about limiting the scope of the release. Nor was there any discussion about carveouts." Because these separate patient torts were never once litigated, negotiated, or discussed during the June settlement conference, there was no valid "meeting of the minds" on that term.

2. **Statute of Limitations Error:** Your legal assessment regarding my daughter's claims is incorrect. Under Michigan law (MCL 600.5851), a minor's personal injury statute of limitations is tolled until her 18th birthday, meaning her independent rights regarding the 2023 assault and emergency room negligence do not expire until 2030 or later.

3. **Personal Parental Damages:** Your firm's insistence that I sign this global release directly targets and extinguishes my personal, individual rights as a mother. Signing this contract permanently bans ME from doing the following in the future:

    - **Seeking Justice for the 2023 Assault:** I will be legally blocked from ever holding Corewell accountable for the physical assault where facility management dragged and pushed my disabled toddler down a public hallway.

    - **Suing for the Urgent Care Medical Emergency:** I can never seek damages for the severe emotional trauma of watching staff completely freeze and panic during my child's 104-degree seizure, which neurology and I have confirmed was a toxic reaction to Permethrin rather than a standard febrile seizure. I am permanently blocked from holding them liable for failing to locate basic oxygen equipment or a specialized pediatric mask, performing improper chest compressions on a child who was already actively breathing, and delaying calling an ambulance.

    - **Violating Medicaid Recovery Rights:** When a child receives specialized medical coverage through state programs like Medicaid or TEFRA, it is not a free gift—it is a legally structured insurance program. Under federal and state laws, the government enforces strict rules called Third-Party Liability (TPL) and Subrogation Rights. This means that if a hospital or emergency room makes a severe operational error or commits medical negligence, and the state program pays for the resulting emergency treatments, ICU stays, or specialist scans, the State has a

mandatory legal right to go after that hospital to get its money back. If I sign Corewell's global boilerplate contract, I am contractually agreeing to wipe out "all claims, known or unknown, past or present," arising from any care up to that date. By doing that, it causes a catastrophic chain reaction:

- **I Destroy the State's Legal Recovery Paths:** By signing away all claims, I am contractually blocking the State of Michigan from exercising its mandatory right to recover funds from Corewell for the urgent care errors or the assault, or any other instances in the future.
- **I Directly Violate My Insurance Agreement:** When I enroll a child in state-mandated coverage, I sign/verbalize an explicit agreement every year upon her TEFRA Medicaid renewal promising that I will never do anything to compromise or waive the state's subrogation rights against a negligent party, I have to as she is a minor and cannot agree herself.
- **The Penalty Is Invalidation or Debt:** The moment the state insurance compliance board discovers that a parent signed a private contract secretly releasing a hospital system from all patient tort liabilities, they have the immediate legal right to cancel my child's coverage entirely, which she desperately needs. Furthermore, they can hold our family personally liable for the full, non-discounted out-of-pocket costs of past emergency treatments, putting us into massive, permanent medical debt.

- **Acting as My Daughter's Legal Representative:** Contractually waiving "all claims" as a mother permanently destroys my standing to act as my minor child's guardian, making it practically impossible for our family to secure separate medical representation for her independent 2030 claims or any other claims in the future.

If your firm chooses to file a Motion to Withdraw rather than defending the scope of the actual employment dispute, that is entirely Miller Cohen's independent choice.

As stated yesterday, I remain 100% cooperative and ready to execute an employment-only release, provide the Defendant the 21 names, for the agreed-upon gross sum of $195,000.00 today. I am waiting for your firm's 5:00 PM production of the missing June 2nd–26th records alongside your written confirmation of whether you intend to execute my explicit contract instructions or file your motion to withdraw.

Regards,

Jackilyn Bunnell

On Thu, Sep 24, 2026 at 7:06 PM Keith Flynn <kflynn@millercohen.com> wrote:

> Jackilyn:
>
> First, an update. Opposing counsel responded at 5:14pm stating:
>
> > It was very clear during the settlement conference that the release would include any and all claims up to the date Ms. Bunnell signs the settlement agreement. At no time during the conference was there any discussion about limiting the scope of the release. Nor was there any discussion about carveouts. As such, our client vehemently disagrees with Ms. Bunnell's assertion that the release/waiver is limited to the claims that were raised in the lawsuit. Our client also is not willing to include a carve-out for medical malpractice claims.
> >
> > Unless Ms. Bunnell is willing to honor the terms of the deal that was reached in court, which included her agreement to provide a full release of all claims, we will file a motion to enforce the settlement. We will also ask the court to order Ms. Bunnell to pay Corewell's attorney's fees associated with the motion, as we believe her position is baseless. Please let us know as soon as possible whether Ms. Bunnell remains steadfast in her position.

Second, a partial response:

- "Intentional missing logs"—What "logs" are you talking about? Regardless, we never said that there is anything missing. You said that in your last email. I told you before we will be providing you with all email correspondence as soon as possible. Your unreasonable deadlines and lengthy emails will not make this go any faster.

- "After Jon left Miller Cohen . . . I was given by him to you . . . ." No, I was the Senior Associate at the time and Head of the firm's Employment Litigation Practice Area. You were not simply given by him to anyone. I agreed to take over your case, which I did, after we were introduced and you were comfortable to proceed. When litigation commenced, Ryan Paree was assigned to your case by me. His work was reviewed by me. The theory of the case and strategy was developed with my guidance. The pleadings were reviewed by me. Two of the most important depositions were taken by me. I discussed settlement with you throughout the lawsuit along with Ryan. I guided the appeal and provided guidance and oversight over the settlement discussions leading up to today. Due to our efforts, your $0 settlement turned into a lawsuit, an appeal, a victory, and a $195k settlement.

- "You personally stepped in and agreed to oversee and manage this file back in August specifically to handle my required safety carve-outs, and you have consistently claimed to be co-managing this file throughout our recent correspondence." I never stepped out. I've been overseeing and managing your case both before and after August--both before the lawsuit was filed and after. You requested that I personally attend the status conference with Ryan. I did. Ryan did a good job and you're lucky to have him representing you.

- "[P]ermitting an associate to dangerously narrow my family's medical protections behind my back . . . ." In Michigan, the statute of limitations for a malpractice claim is two years from the date of discovering an injury that resulted from an alleged mistake, but no later than 6 years after the date of the original act or omission. We provided a referral in 2024 to a medical malpractice attorney, but the details of why you were making that request at the time were somewhat vague. Nonetheless, if you have passed the statute of limitations, then there is a strong chance that the medical malpractice claim would be dismissed.

- In regards to doing something behind your back to narrow your protection, nothing could be further from the case. You wanted us to demand that the release only apply to "my past employment claims." Ryan demanded via email that any release be **"<u>limited to those claims which were part of the lawsuit only.</u>"** He then sent you the email where he made that demand. I mentioned that in my last email to you—a point that you totally ignored.

- "[T]he permanent record . . ." The only person who seems to think that you did not agree to a full release of all claims at the settlement conference is you. The Judge won't buy that. Opposing counsel clearly won't. We don't even buy it. I've told you what a settlement agreement entails in an employment lawsuit on several occasions over the many years that I have represented you. This was not a new concept that you were ignorant of. Indeed, you have told me on several occasions that you just want to be done with this and with them. Future litigation is not how you accomplish that.

Third, a recommendation. Once the remaining terms are finalized by Ryan, with my oversight, in a way that is in-keeping with what was agreed to during the settlement conference, you execute the agreement, get paid a very large sum for you and your family, and finally move on with your life. You beat one of the largest employers in the State of Michigan and one of the largest law firms in the country. You've won.

Fourth, a statement of intent. If you refuse to sign a settlement agreement in-keeping with what was agreed to during the settlement conference (including a full release of all claims), we will have no other choice. We will file a motion to withdraw. We know what we told you. We know what was said. You were fully aware of what a full release of all claims entailed. We cannot and will not pursue a frivolous or dishonest position. At that time, we will file a motion to withdraw.

Again, I hope that it doesn't come to that. Frankly, I only wish you and your family the best after this long, but victorious struggle. I hope that you not only find the strength to move forward, but the peace and comfort that comes after as well.

Only the best regards.

**Keith D. Flynn**
Partner
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

LEGAL NOTICE: This e-mail is for the exclusive use of the intended recipient(s). If you are not an intended recipient, please notify the sender by reply e-mail or by calling 313-964-4454, delete the e-mail from your computer, and do not copy or disclose it to anyone else. Unauthorized disclosure, copying, distribution, reliance or use is prohibited. Neither this e-mail nor its attachment(s) establish an attorney-client relationship, constitute an electronic signature or provide consent to contract electronically, unless expressly so stated by a Miller Cohen, P.L.C. attorney in the body of this e-mail or an attachment. FEDERAL TAX ADVICE DISCLAIMER: Under U. S. Treasury Regulations, we are informing you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

---

**From:** Jackilyn Bunnell <j.vbunnell@gmail.com>
**Sent:** Thursday, September 24, 2026 11:56 AM
**To:** Keith Flynn <kflynn@millercohen.com>
**Cc:** Robert Fetter <rfetter@millercohen.com>; Richard Mack <richardmack@millercohen.com>; Ryan Paree <rparee@millercohen.com>
**Subject:** Re: FW: Bunnell/Beaumont - Supplemental Discovery Responses

Keith,

I note your acknowledgement of the apparent intentional missing logs and your formal refusal to produce the missing June 2nd – June 26th correspondence logs before today's deadline.

Regarding your statement on internal staffing: I am not requesting that this firm implement a brand-new administrative change. After Jon left Miller Cohen and was unable to get a settlement back in 2021, I was given by him to you to continue my representation. Thus, I agree you have already been managing this case. You personally stepped in and agreed to oversee and manage this file back in August specifically to handle my required safety carve-outs, and you have consistently claimed to be co-managing this file throughout our recent correspondence. Demanding that a senior partner fulfill the exact management and drafting duties he *already accepted*—rather than permitting an associate to dangerously narrow my

family's medical protections behind my back—is a standard client expectation, not an administrative intrusion, and is not a new request. You have been assigned to my case for 5 years.

To be absolutely clear for the permanent record: I am not terminating Miller Cohen's representation, nor am I refusing to execute the $195,000.00 settlement framework regarding my past employment claims that we placed on the record. I am fully cooperative, ready to sign an accurate, employment-only release today, and I am actively requesting that this firm fulfill its fiduciary duties to execute my explicit contract instructions well ahead of the Court's October 5th deadline.

If you are now refusing to fulfill your explicit management duties on this file, choose to continue to withhold my historical records refuse to correct the dangerous '2020 childbirth' restriction that leaves my family's subsequent medical liabilities exposed to a global corporate waiver, and refuse to provide the Defendant the names of my coworkers for non-disparagement the Defendant has already agreed to see, that is entirely Miller Cohen's independent choice. If your firm determines that its obligations to newer larger clients prevent it from responsibly executing my file directives or correcting Ryan's mischaracterizations to the defense, I agree that is unfortunate. The longer this firm allows an untrue statement regarding my final terms to remain active with Corewell's counsel, you are directly sabotaging my negotiating leverage and ensuring this process takes longer. I am fully prepared to hand this complete written chain—including my July safety directives, the newly exposed September 22nd defense logs, and your firm's intentional delay to produce full June records—directly to the Court so the Judge can review and judicially restrict Corewell's boilerplate to the actual employment scope of this lawsuit.

I note your confirmation that this firm has no issue providing the full and complete email correspondence I directed you to produce. I will extend the deadline for the missing June 2nd through June 26th communications to tomorrow, **Friday, September 25th at 5:00 PM**, to be delivered alongside your written confirmation of the firm's intent regarding withdrawal or execution as I agree the back-and-forth is a waste of time and is misleading to the Defendant.

Regards,

Mrs. Bunnell

On Thu, Sep 24, 2026 at 9:04 AM Keith Flynn <kflynn@millercohen.com> wrote:

Mrs. Bunnell:

If we are going to remain your legal representatives, it is important to reiterate certain roles and responsibilities. Our firm decides internal administrative and staffing matters. Our clients do not. You are not our only client. We have hundreds of clients, including dozens of institutional clients where hundreds of people depend on our representation. Over the course of the last few weeks, Ryan and I have been working very hard on your behalf. At the same time, we represent numerous others, including more than 700 nurses who have been on the picket line for over a year and who were on the verge of losing their union and their jobs. Instead of working on protecting those individuals when our response was due the very next day, I spent that time responding to your last email. That does not mean that your matter is not important to us, only that our internal administrative and staffing decisions will be decided by our firm for the benefit of all of our clients based on our sound discretion.

As I have told you in the past, you hire attorneys to exercise their best independent legal and professional judgment and discretion. Ryan and our firm have clearly provided you that given the successful result of our representation. Both Ryan and I have appeared on your behalf before the Court to provide you with that successful result. If you insist on Ryan no longer being part of this litigation, he will be forced to file a motion to withdraw from representation. Let me be very clear with you, if that happens, then my firm and I will also be filing a motion to withdraw from your case. The basis for that motion will be a fundamental breakdown in the attorney client relationship. I believe that would be highly regrettable given the circumstances and how close we are to getting this finished.

Ryan's correspondence with opposing counsel was both appropriate and necessary to advance your interests and the revisions that you are concerned about. That is exactly what you asked us to do yesterday: "I have stated consistently since July, August, September, and in my directive today, expanding the scope of an employment resolution to extinguish personal medical negligence liabilities regarding my family's 2020 trauma was never disclosed to me, was never part of our mediation scope, and does not have my informed consent." You said that the release "must be restricted strictly to my capacity as an employee, explicitly excluding personal medical malpractice and patient-provider negligence."

Ryan literally stated that you would only sign a settlement agreement that is "**limited to those claims which were part of the lawsuit only.**" Ryan also demanded an explicit carve-out for medical malpractice claims related to your 2020 childbirth for you and your daughter. As he already told you, your daughter's claims are not affected by a release of your claims, yet, he explained to the other attorney that this issue will be a dealbreaker without appropriate language narrowing the release accordingly.

Regarding full and complete email correspondence, we have no issue with providing you with that. Even Ryan acknowledged yesterday that he believed the chain below was complete as to our most recent communications with the other side. That being said, sending all email correspondence is very time consuming. That will not happen by an arbitrarily imposed noon deadline. I should note that I am already late to a bargaining session for hundreds of police officers because I spent the time to respond to your most recent email. That is not because their matter is unimportant to us, but because I wanted to show you respect in addressing your most recent email.

**Keith D. Flynn**
Partner
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

LEGAL NOTICE: This e-mail is for the exclusive use of the intended recipient(s). If you are not an intended recipient, please notify the sender by reply e-mail or by calling 313-964-4454, delete the e-mail from your computer, and do not copy or disclose it to anyone else. Unauthorized disclosure, copying, distribution, reliance or use is prohibited. Neither this e-mail nor its attachment(s) establish an attorney-client relationship, constitute an electronic signature or provide consent to contract electronically, unless expressly so stated by a Miller Cohen, P.L.C. attorney in the body of this e-mail or an attachment. FEDERAL TAX ADVICE DISCLAIMER: Under U. S. Treasury Regulations, we are informing you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

---

**From:** Jackilyn Bunnell <j.vbunnell@gmail.com>
**Sent:** Thursday, September 24, 2026 7:02 AM
**To:** Keith Flynn <kflynn@millercohen.com>; Robert Fetter <rfetter@millercohen.com>; Richard Mack

<richardmack@millercohen.com>
**Cc:** Ryan Paree <rparee@millercohen.com>
**Subject:** Re: FW: Bunnell/Beaumont - Supplemental Discovery Responses

Keith, Mr. Mack, and Mr. Fetter,

I note that Ryan Paree is still actively executing drafting operations and communicating on this file in direct violation of the formal administrative directive I issued yesterday morning. While I acknowledge that Mr. Paree was the custodian required to compile the requested email chains, forwarding those documents directly to me without partner oversight or an official management response bypasses standard professional protocol. Please formally clarify in writing whether Miller Cohen intends to comply with my senior counsel reassignment directive or proceed with a formal motion to the Court.

Furthermore, due to the firm's failure to restrict Ryan Paree's access, his 4:30 PM communication to Corewell's counsel dangerously compromises my family's legal safety. By narrowing the carve-out strictly to my '2020 childbirth,' Mr. Paree has left my daughter's subsequent anesthesia head injury, assault, and ongoing specialized treatments completely exposed to Corewell's global waiver template. This broad exposure directly violates the binding commitment you personally made to me in August, Keith. Characterizing this critical carve-out as merely 'Plaintiff's position' rather than a long-standing, mutually agreed-upon baseline is highly deceptive. Allowing an unauthorized associate to mischaracterize my directives and timeline to the defense serves no legal purpose other than to cover up this firm's own historical drafting omissions and label a month-old standing instruction as a last-minute request.

Yesterday's late-afternoon reply is incomplete and fails to comply with my instruction for the entire, unedited record. The forwarded file contains a 24-day gap between June 2nd and June 26th—entirely withholding the written communications regarding my tax allocation requirements, the firm's $26,000 arithmetic error, and the specific representations made to the Defendant regarding the settlement structure request in my pro se motion. I require the immediate production of the full, unedited correspondence from this specific window to verify that this firm did not compromise my legal position or future negotiations. If this firm is acting with complete transparency, these missing June records will be produced alongside your noon response today.

Reviewing the forwarded correspondence reveals that David Cessante explicitly granted this firm until Monday, September 28th to provide a response. The coercive 5:00 PM ultimatums and immediate threats of withdrawal issued to me this week were entirely fabricated by this firm to force a premature signature. This pattern of misrepresentation includes Mr. Paree's August 5th email to the Defendant, which disparaged my attention to detail by stating I am 'nothing if not thorough'—a comment used to minimize my valid contractual concerns while he completely failed to identify that Corewell had misspelled my name and entirely omitted my promised neutral HR protections. Utilizing unprofessional commentary to opposing counsel to mask a clear deficit in basic administrative due diligence is unacceptable, as was the false assertion that a medical carve-out was legally impossible to request.

As documented on page 4 of the September 21st correspondence, Mr. Paree explicitly notified the defense that a specific list of individuals for the non-disparagement clause was forthcoming. However, the firm failed to execute my instructions and completely omitted these parameters from subsequent communications. To preserve my free speech and ensure the final agreement is corrected accurately, I am enclosing the definitive list of 21 individuals that must be explicitly written into the non-disparagement exclusions alongside the comprehensive medical carve-outs that I am now providing for the third consecutive time since July:

Yes the department name I believe was **Cardiovascular Medicine** (or **Heart & Vascular Services) and also would want to include Ernst Heart Center I and II and Women's Heart Center (outpatient). They might be called Echo now under the rebranding I'm not sure.**

**The Echo Department Individuals I have last time I checked based off the schedule:**

**Deni J.**

**Sue K.**

**Lea Mirafelix**

**Sandra**

**Terri E.**

**Lakshmi G**

**Pauny K.**

**Julie Perrin**

**Alketa S.**

**Barbara K**

**Emily T.**

**Nevien H.**

**Nada Papa**

**Steve M**

**Lesley Sleeman**

**Cristina G**

**Julie M**

**Pat Bailey**

**Carol ?**

**Irina (Women's Heart)**

**Dr. Bilolikar Medical Director at the time ?**

Consequently, while I thank Mr. Paree for his time and past victories on my case, I am issuing a final directive to senior partnership to immediately remove him from this file. He must be permanently restricted from any further drafting, operations, or defendant contact. Senior counsel must immediately transmit a corrected communication to the Defendant's counsel clarifying that the medical carve-out encompasses all past, present, or undisclosed personal medical negligence and patient-provider tort liabilities for my entire family, completely free of the unauthorized '2020 childbirth' restriction to properly share with their client. I require a copy of this corrected partner-level transmission to be forwarded directly to my inbox for verification.

Please confirm in writing by today, September 24th at 12:00 PM, which senior partner is officially taking over management of this file to correct this drafting error, and forward the unedited text of any written responses received from Corewell's counsel.

I require all future contract files and management updates to proceed strictly through the partners in writing.

Regards,

Mrs. Bunnell

On Wed, Sep 23, 2026 at 4:38 PM Ryan Paree <rparee@millercohen.com> wrote:

Mrs. Bunnell,

I believe this email chain captures all of the emails between myself and David regarding finalizing your settlement agreement.

Sincerely,

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

**From:** Ryan Paree
**Sent:** Wednesday, September 23, 2026 4:30 PM
**To:** Cessante, David M. <dcessante@clarkhill.com>; Romeo, Stephanie V. <sromeo@clarkhill.com>; Keith Flynn <kflynn@millercohen.com>
**Subject:** RE: Bunnell/Beaumont - Supplemental Discovery Responses

David,

This email is to confirm our conversation today, in which I conveyed the Plaintiff's position as to the waiver of claims. Specifically, it is her position that the waiver which was agreed to is limited to those claims which were part of the lawsuit only, and furthermore that the waiver must explicitly have a carve-out for medical malpractice claims related to her 2020 childbirth for herself and her daughter. These are essential terms, and Mrs. Bunnell will not sign off on a settlement agreement that does not have language to this effect.

You indicated that you would speak to your client about that issue and follow up.

Thank you,

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.
7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

**From:** Cessante, David M. <dcessante@clarkhill.com>
**Sent:** Tuesday, September 22, 2026 2:22 PM
**To:** Ryan Paree <rparee@millercohen.com>; Romeo, Stephanie V. <sromeo@clarkhill.com>; Keith Flynn <kflynn@millercohen.com>
**Subject:** RE: Bunnell/Beaumont - Supplemental Discovery Responses

Ryan,

I have confirmed with our client that we will file a motion to enforce the settlement if Plaintiff continues to insist on the structured settlement. In light of the October 5 deadline set by the Court, please let us know Plaintiff's position on this issue by Monday, September 28.

In an effort to streamline matters, our position regarding the proposed revisions you circulated yesterday are as follows:

- We are agreeable to adding language stating that the release does not apply to future claims. However, this language should be added to paragraph 2, not paragraph 4.

- We do not understand or agree with the language that was added to paragraph 10 stating that nothing in the non-disparagement clause prevents Plaintiff from pursuing legal claims, lawsuits, or grievances against Corewell that "are not waived under Section 2 and/or 4." Plaintiff is releasing all possible claims against Corewell up to the date she signs the Agreement, so there are no claims that aren't being "waived" under paragraph 2. If this is another way of stating that Plaintiff isn't releasing future claims, the Agreement only needs to say that once.

- We do not agree to the language that was added to paragraph 10 limiting the non-disparagement clause to "employment claims released in Paragraph 4." In addition to the fact that the release is in paragraph 2, not paragraph 4, Plaintiff is releasing Corewell from any and all claims she has up to the date she signs the Agreement; not just employment claims. Therefore, we're not agreeable to limiting the scope of the non-disparagement clause to employment-related claims.

With regard to the prior revisions we were discussing, we are agreeable to your proposed revisions to the Medicare paragraph and to adding to "non-equivalent position" language to the neutral letter of reference. For the contact information in paragraph 11, we can add language stating that any inquiries must be directed to the HR Compliance team at 616-391-3576 or emailed to HRCompliance@corewellhealth.org.

# EXHIBIT

# B

# Beaumont

Beaumont Hospital, Royal Oak
3601 West 13 Mile Road
Royal Oak, MI 48073

January 30, 2023

Ms. Jackilyn Bunnell
Re: Aerilyn Bunnell
25242 Hunter Lane
Flat Rock, MI 48134

Dear Ms. Bunnell,

Thank you again for taking the time to speak with us on November 04, 2022 regarding your concerns when your daughter, Aerilyn, was a patient at the Beaumont Speech Therapy Clinic. Please know it is always our intention to provide excellence in our medical and personal care, and I am truly sorry we fell short of meeting your expectations.

I completed my investigation and shared your concerns with Kellie Bouren, Manager of Speech Pathology, Corey Overmyer, Director of Physical Medicine and Rehabilitation Services, and our Compliance Administrative Team.

Ms. Bouren and Mr. Overmyer sincerely apologize for your experience, and any miscommunication regarding the way the Speech Therapy group sessions are billed. They have utilized this feedback to reinforce with staff the importance of providing clear communication to all of our patients and their families, and they were able to provide a service-related waive of your daughter's previous group session charges.

The Compliance Team completed a thorough review of the billing process for the group sessions in question to determine if this service could be billed to insurance. It was found based on the details of the service that it cannot be billed to insurance. Therefore, it will continue to be self-pay only if you choose to continue your daughter's participation in the group sessions.

I truly hope this letter finds you and your family well. We very much hope to be able to regain your trust, and if I can be of any assistance in the future, please don't hesitate to reach out.

With kindest regards,

Heidi Mykolaitis
Patient Satisfaction Analyst
(248)551-0500

# EXHIBIT

# C

Gmail **Jackilyn Bunnell <j.vbunnell@gmail.com>**

## FW: Bunnell/Corewell - Settlement Terms

1 message

**Ryan Paree** <rparee@millercohen.com> Fri, Sep 25, 2026 at 9:37 AM
To: Jackilyn Bunnell <j.vbunnell@gmail.com>
Cc: Keith Flynn <kflynn@millercohen.com>

Mrs. Bunnell,

I will let Keith address the remainder of your concerns. This email is one the only two communications with Defendant that I could find between June 2, 2026 and June 26, 2026. Nothing in the previous email chain I have sent is "edited," as you implied, it is complete and sent exactly as it appears in my emails. Neither this email, nor the second one I will send, were included in that email chain. I will send the only other written communication in my possession momentarily.

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

**From:** Romeo, Stephanie V. <sromeo@clarkhill.com>
**Sent:** Friday, June 12, 2026 4:31 PM
**To:** Ryan Paree <rparee@millercohen.com>
**Cc:** Cessante, David M. <dcessante@clarkhill.com>; Keith Flynn <kflynn@millercohen.com>
**Subject:** Bunnell/Corewell - Settlement Terms

Hi Ryan,

We're writing to confirm the terms of the settlement as agreed to during yesterday's settlement conference. The agreed upon terms are as follows:

- A payment of $195,000. With regard to Plaintiff's portion of the settlement payment, 90% will be subject to a 1099 and 10% will be treated as wages, subject to tax withholdings. Plaintiff agrees

to indemnify Corewell for any tax consequences associated with the 1099 portion of the payment.

- Full release of any and all claims by Plaintiff, including, but not limited to, those claims that have been pled or could have been pled up to the day she signs the settlement agreement.

- Covenant Not to Sue

- No Admission of Liability by Corewell

- Dismissal of the lawsuit with prejudice

- No Re-Hire/Re-Employment with Corewell

- Confidentiality

- Mutual Non-Disparagement
  - Plaintiff will not disparage Corewell or its employees/officers/directors/agents or affiliated entities
  - Applicable to Burgett and Zeiter and only dates of employment and positions held will be released to any third parties who inquire about Plaintiff

- Reference letter – Corewell will provide Plaintiff with a generic letter from HR indicating her separation of employment was due to the layoffs during the COVID-19 pandemic and was not performance related

We will prepare a draft of the Settlement Agreement for your review and send that to you next week.

Thank you!

Stephanie

**Stephanie V. Romeo**

Attorney at Law

**Clark Hill**

500 Woodward Avenue, Suite 3500, Detroit, MI 48216

+1 313.309.4279 (office) | +1 313.296.8066 (cell) | +1 313.309.6836 (fax)

sromeo@clarkhill.com | www.clarkhill.com

# EXHIBIT

# D

**SETTLEMENT AGREEMENT, RELEASE OF ALL CLAIMS, COVENANT NOT TO SUE AND CONFIDENTIALITY AGREEMENT**

This Settlement Agreement, Release of All Claims, Covenant Not to Sue and Confidentiality Agreement ("Agreement") is made by and between **Jackilyn Bunnell** ("Bunnell") and **Corewell Health** ("Corewell") and its successors, predecessors, parents, subsidiaries, affiliates, partnerships, related entities, past and current officers, directors, members, board members, employees, agents, insurers, attorneys and assigns in their official and individual capacities (collectively, the "Released Parties").

A. Whereas, on October 10, 2022, Bunnell filed a Complaint in the United States District Court for the Eastern District of Michigan, bearing Case No. 2:22-cv-12414, alleging employment-related claims against Corewell (the "Civil Action");

~~B.~~ Whereas, Corewell timely filed its Answer and Affirmative Defenses to the Complaint in the Civil Action, denying all allegations of wrongdoing and any liability;

B.

~~C. Whereas, on February 21, 2023, Bunnell filed an Amended Complaint in the Civil Action, adding claims additional employment-related claims;~~

~~D. Whereas, Corewell timely filed its Answer and Affirmative Defenses to the Amended Complaint in the Civil Action, denying all allegations of wrongdoing and any liability;~~

~~E. Whereas, the court subsequently granted Corewell's Motion for Summary Judgment, which resulted in all of the claims in the Amended Complaint being dismissed with prejudice;~~

~~F. Whereas, Bunnell filed an appeal with the Sixth Circuit Court of Appeals, bearing Case No. 24-1889;~~

~~G. Whereas, the Sixth Circuit Court of Appeals affirmed the lower court's ruling with regard to Bunnell's disability discrimination, failure to accommodate, and retaliation claims under the Americans with Disabilities Act and Persons With Disabilities Civil Rights Act, Plaintiff retaliation claim under Title VII and the Elliott-Larsen Civil Rights Act, and Plaintiff's retaliation claim under the Family and Medical Leave Act, but reversed and remanded with regard to Plaintiff's pregnancy discrimination claims under Title VII and the Elliott-Larsen Civil Rights Act and Plaintiff's interference claim under the Family and Medical Leave Act; and~~

~~H.~~C. Whereas, Bunnell is willing to voluntarily dismiss her Civil Action with prejudice.

Formatted: List Paragraph, Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Now, therefore, Bunnell and the Released Parties are willing to amicably resolve all differences and enter into this Agreement based upon the following terms and conditions:

1. **CONSIDERATION.** In consideration for the release and other promises made by Bunnell in this Agreement, Corewell agrees to provide Bunnell with the attached letter relating to her

separation from employment and a payment of One Hundred Ninety-Five Thousand and 00/100 ($195,000.00) Dollars. Corewell agrees to pay the sums outlined below:

Formatted: Indent: Left: 0.5", No bullets or numbering

~~1.~~ 1.1 Payments due at the time of settlement as follows:~~This payment will be made in the form of three checks as follows:~~

a. ~~a check payable to Bunnell in the amount of~~ ____Twelve Thousand Twelve and __/02/100 ~~($___)~~ (12,012.02) Dollars, less withholdings for federal, state, and local income taxes, which is for alleged economic damages. Corewell will issue a Form W-2 to Bunnell for this payment.

~~b. a check payable to Bunnell in the amount of _____ and ___/100 ($____) Dollars for alleged emotional distress damages, which will not be subject to income tax withholdings. Corewell will issue an IRS Form 1099 to Bunnell for this payment.~~

Formatted: Normal, Left, No bullets or numbering

Formatted: Normal, Left, Indent: Left: 0"

b. A~~a~~ check payable to Miller Cohen, PLC in the amount of _____Seventy Four Thousand, Eight Hundred Seventy Nine and __81/100 ~~($_____)~~ ($74,879.81) Dollars, in full satisfaction of Bunnell's attorney's fees and costs. Corewell will issue a Form 1099 to both Bunnell and to Miller Cohen, PLC for this payment.

Formatted: Left, Indent: Left: 0.5", No bullets or numbering

1.2 Periodic payments to Bunnell made according to the Schedule of Payments as follows:

______

$1,103.86 payable monthly, guaranteed for 10 year(s) which is 120 payments, beginning on 01/15/2027, with the last guaranteed payment on 12/15/2036.

Formatted: Indent: Left: 1"

~~c.~~ All sums set forth herein constitute damages on account of employment-related claims against Corewell.

Formatted: Indent: Left: 0.5", No bullets or numbering

Formatted: Indent: Left: 0"

Bunnell acknowledges that the consideration set forth above is being provided to her in compromise and settlement of all of her claims and causes of action, known and unknown, and as consideration for the various releases, covenants and agreements undertaken in this Agreement. Bunnell agrees that she is not otherwise entitled to the consideration set forth above under any contract, agreement, practice, custom or usage of the Released Parties, and understands that it is being provided to her as a business decision to resolve claims and obtain a complete and final release.

Bunnell agrees that she is solely responsible for any and all taxes as may be imposed on her with respect to the portion of the settlement payment under paragraph 1.b. Bunnell agrees to indemnify and hold Corewell harmless for any tax liabilities, penalties and interest Corewell may incur as a result of any refusal or failure by Bunnell to pay any taxes due on the settlement amount.

1.3 Non-Qualified Assignment

The parties hereto acknowledge and agree that Corewell may make a non-qualified assignment of Corewell's liability to make the periodic payments required herein. Any such assignment, if made, shall be accepted by Bunnell without right of rejection and shall completely release and discharge Corewell from those obligations hereunder that are assigned to METLIFE ASSIGNMENT COMPANY, INC. (the "Assignee"). Bunnell recognizes that, in the event of such an assignment, the Assignee shall be their sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of Corewell shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a Non-Qualified Assignment, the Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

1.4 Rights to Payments

Said payments cannot be accelerated, deferred, increased or decreased by Bunnell or any Payee, nor shall Bunnell or any Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise.

1.5 Right to Purchase an Annuity

Corewell and/or the Assignee reserve the right to fund its liability to make periodic payments through the purchase of an annuity policy from METROPOLITAN TOWER LIFE INSURANCE COMPANY (the "Annuity Issuer"). Corewell and/or the Assignee shall be the owner of the Annuity policy and shall have all the rights of ownership. Corewell and/or the Assignee may have the Annuity Issuer mail payments directly to the Payee. Bunnell shall be responsible for maintaining the currency of the proper mailing address and mortality information to the Annuity Issuer.

1.6 Bunnell's Beneficiary

**Formatted:** Indent: Left: 0", First line: 0.5"

Any payments to be made after the death of Bunnell pursuant to the terms of this Settlement Agreement and Release shall be made to such person or entity as shall be designated in writing by Bunnell, to Corewell and/or the Assignee. If no such person or entity is so designated by Bunnell, such payments shall be made to the Estate of Bunnell. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to Corewell and/or the Assignee. The designation must be in a form acceptable to Corewell and/or the Assignee, but in no event shall the request of Bunnell be unreasonably withheld or denied.

1.7 Discharge of Obligation

The obligation of the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of

**Formatted:** Indent: First line: 0.5"

 Initial __

58819\453876\288543998.v2

such payment on or before the due date to the last address on record for Bunnell with the Annuity Issuer. If Bunnell notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

1.8 Future Cooperation

All parties agree to cooperate fully and execute any and all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement, which are not inconsistent with its terms.

2. **GENERAL RELEASE.** As a material inducement to the Released Parties to enter into this Agreement, and for good and valuable consideration to be paid pursuant to this Agreement, Bunnell, with full understanding of the content and legal effect of this Agreement and having the right and opportunity to consult with her counsel, releases and discharges the Released Parties (as defined above) from any and all claims, actions, causes of action, grievances, suits, charges or complaints of any kind or nature whatsoever, that she ever had or now has, up to the date she signs this Agreement, whether fixed or contingent, liquidated or unliquidated, known or unknown, suspected or unsuspected, and whether arising in tort, contract, statute or equity, before any federal, state, administrative, local or private court, agency, arbitrator, mediator or other entity, regardless of the relief or remedy.

Without limiting the generality of the foregoing, it being the intention of the parties to make this release as broad and as general as the law permits, this release specifically includes any and all claims arising from any alleged violation by the Released Parties of the *Age Discrimination in Employment Act of 1967*; *Title VII of the Civil Rights Act of 1964*; *Americans with Disabilities Act*; *Equal Pay Act*; *Fair Labor Standards Act*; *Family and Medical Leave Act*; *Executive Order 11246*; *Executive Order [Vietnam] 11141*; *the Civil Rights Act of 1866*, as amended by the *Civil Rights Act of 1991* (42 U.S.C. § 1981); *Providing Urgent Maternal Protections Act*; *Rehabilitation Act of 1973*; *Employee Retirement Income Security Act of 1974*; *Elliott-Larsen Civil Rights Act*; *Michigan Persons With Disabilities Civil Rights Act*; *Michigan Whistleblowers' Protection Act*; *Michigan Wage and Fringe Benefits Act*; *Bullard-Plawecki Employee Right to Know Act*; any claim for retaliation under the *Michigan Workers' Disability Compensation Act*; any claim under 29 U.S.C. § 2614(a)(1), any claim for statutory retaliation; and any other federal or state statutory claims. This release also includes any common law claims, including breach of express or implied contract; promissory estoppel; wrongful discharge in violation of public policy; fraud; misrepresentation; tortious interference with contractual relations, business relations or other expectancy; intentional infliction of emotional distress; defamation; retaliation; or invasion of privacy, and includes all claims arising out of or involving Bunnell's employment with and separation from Corewell.

3. **AFFIRMATIONS.**

A. Bunnell affirms that she has not filed, caused to be filed, nor presently is a party to any claim against the Released Parties, aside from the Civil Action, which she is dismissing with prejudice as a condition of this Agreement.

B. Bunnell affirms that she has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, other than those arising from this Agreement.

C. Bunnell affirms that she has no known workplace injuries or occupational diseases.

4. **COVENANT NOT TO SUE.** Bunnell, for herself, her heirs, executors, administrators, successors and assigns agrees not to bring, file, charge, claim, sue or cause, assist, or permit to be brought, filed, charged or claimed any action, cause of action or proceeding regarding or in any way related to any of the claims released by her under paragraph 2 hereof, and further agrees that this Agreement is, will constitute and may be pleaded as, a bar to any such claim, action, cause of action or proceeding. This release applies only to claims arising out of causes of action which occurred prior to the execution of this Agreement, and does not apply to any future claims.

Formatted: Highlight

Formatted: Highlight

Nothing in this Agreement precludes or limits Bunnell's right to file a timely charge or complaint with the Equal Employment Opportunity Commission or any similar state or local administrative agency regarding any claim or issue that arose prior to the date Bunnell signed this Agreement. However, by signing this Agreement, Bunnell waives her right, if any, to receive any monetary damages or other relief associated with such charge or complaint. Similarly, Bunnell waives her right, if any, to recover any unpaid wages or damages stemming from any investigation or findings by the Department of Labor regarding any wage and hour issue that arose prior to the date Bunnell signed this Agreement.

5. **DISMISSAL OF CIVIL ACTION.** Bunnell, through her attorneys, agrees to promptly execute an order dismissing the Civil Action with prejudice.

6. **NO REEMPLOYMENT.** Bunnell agrees that she has no rights to reemployment, recall or rehire with Corewell or its parents, successors, subsidiaries, affiliates or related entities. Bunnell further agrees that she will not in the future apply for, seek or accept reemployment with Corewell or its parents, successors, subsidiaries, affiliates, or related entities. In the event Bunnell is hired by such an entity in contravention of this paragraph, inadvertently or otherwise, Bunnell agrees that the entity will have legitimate cause for her termination or she will immediately resign. This paragraph shall not apply to positions at which Bunnell is employed by a non-Corewell employer, and while Bunnell is employed there, said employer becomes acquired by or otherwise affiliated with Corewell.

7. **RETURN OF PROPERTY.** Bunnell represents and warrants that she has returned all property in her possession belonging to Corewell, and if any such property is subsequently discovered, she agrees to immediately turn it over to the Released Parties.

8. **No Admission of Liability.** This Agreement is entered into for the purpose of compromise and settlement of any disputed claims between the Released Parties and Bunnell. The execution hereof and the consideration set forth in paragraph 1 shall not constitute or be deemed an admission of liability by the Released Parties of any of Bunnell's claims.

9. **Confidentiality.** Bunnell agrees that she will keep the terms and amounts set forth in this Agreement completely confidential and will not disclose any information concerning these matters to any person or entity not a party hereto, except: (a) her spouse, attorney, accountant, or tax advisor, who agree to abide by this confidentiality provision; (b) to the extent necessary to report income to appropriate taxing authorities as expressly required by law; or (c) in response to a specific court order, subpoena or legal process signed by a judge with competent jurisdiction which orders the disclosure of the nature, content, substance, conditions or specific terms of the Agreement or the underlying facts relative to the Civil Action.

If any inquiries arise concerning the resolution of Bunnell's claims or about this Agreement, Bunnell may reply only that "the matter has been resolved," and may not make any other comment. Violations of this section include, but are not limited to, ~~comments that there was a settlement,~~ the amount or size of the settlement, the range of settlement, and/or the amount of any offers or counteroffers. Bunnell also agrees not to comment on or suggest the motivations of the Released Parties for entering into this Agreement.

10. **No Disparaging, Untrue, or Misleading Statements.** Bunnell agrees that she will not make or publish to any third party any disparaging, untrue or misleading written or oral statements about or relating to Corewell or its employees, officers, directors, agents or affiliated entities regarding the employment claims released in Paragraph 4. Nor will she knowingly or intentionally take any action having the effect of damaging the business reputation of Corewell or its affiliated entities. Nothing in this Agreement shall restrict Plaintiff from sharing her own or her child's personal medical histories, so long as Plaintiff does not name Corewell or any of its affiliates.

Formatted: Highlight

Corewell agrees that Tracy Zeiter, Lauren Burgett, and employees in Corewell's Human Resources Department, Cardiovascular Medicine Department, Ernst Heart Center I and II, and Women's Heart Center ~~agree they~~ will not make or publish to any third party any~~d~~ disparaging, untrue, or misleading ~~written or oral~~ statements about or relating to Bunnell. Nor will they take any action having the effect of damaging Bunnell's reputation.

The restrictions in this section include, but are not limited to, comments or posts on social media. Nothing in this section shall be held to prohibit Ms. Bunnell from pursuing any legal claims, lawsuits, or grievances she may have against Corewell or its affiliated entities which are not waived by Sections 2 and/or 4.

Formatted: Highlight

Formatted: Highlight

11. **Neutral Reference.** In the event Corewell is contacted by a third-party regarding Bunnell's employment, Corewell will only provide Bunnell's dates of employment and position~~(s)~~ held. *** Need third party contact information ***

12. **Medicare and Social Security Benefits.** By her signature below, Bunnell affirms, covenants, and warrants she is not a Medicare beneficiary and is not currently receiving, has not received in the past, will not have received at the time of payment pursuant to this Agreement, is not entitled to, and is not eligible for, ~~and has not applied for or sought~~ Social Security Disability or Medicare benefits. ~~In the event any statement in the preceding sentence is incorrect (for example, but not limited to, if Bunnell is a Medicare beneficiary, etc.), the remaining sentences of this paragraph apply.~~ By her signature below, Bunnell affirms, covenants, and warrants she has made no claim for illness or injury against, nor is she aware of any facts supporting any claims against, the Released Parties under which such released parties could be liable for medical expenses incurred by Bunnell before or after the execution of this Agreement. Furthermore, Bunnell is not aware of any medical expenses that Medicare has paid and for which the Released Parties are or could be liable now or in the future. Bunnell agrees and affirms that, to the best of her knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist. Bunnell will indemnify, defend, and hold the Released Parties harmless from Medicare claims, liens, damages, conditional payments, and rights to payment, if any, including attorney's fees, and she further agrees to waive any and all future private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) et seq.

13. **Not Evidence.** The parties agree that this Agreement is in settlement of any claims and may not be used as evidence in any action, except an action to enforce this Agreement.

14. **Severability.** If any provision of this Agreement shall be found by a court to be invalid or unenforceable, in whole or in part, then such provision shall be construed and/or modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excised from this Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had not been originally incorporated herein, as the case may be. Upon a finding by a court, administrative agency or other tribunal of competent jurisdiction that any release, waiver or covenant contained in this Agreement is void, illegal or unenforceable, Bunnell agrees to promptly execute a release, waiver or covenant that is legal and enforceable.

15. **Waiver.** A waiver by the Released Parties of a breach of any provision of this Agreement ~~by Bunnell~~ shall not operate or be construed as a waiver or estoppel of any subsequent breach ~~by Bunnell~~. No waiver shall be valid unless in writing and signed by Bunnell or an authorized officer of the Released Parties.

16. **Miscellaneous Provisions.**

a. Bunnell acknowledges that she has been advised to and has, in fact, consulted with an attorney prior to executing this Agreement.

b. Bunnell represents that neither the Released Parties, nor their agents, representatives or attorneys, have made any representations concerning the terms or effects of this Agreement other than those contained in the Agreement itself.

c. Bunnell understands, agrees and deems that the consideration exchanged for the various releases, covenants and agreements contained herein is sufficient and apportionable and waives any and all rights to assert any claim of lack of sufficiency and/or apportionability of consideration.

d. Bunnell agrees that she is signing this Agreement voluntarily and of her own free will, and not because of any threats or duress.

e. Bunnell certifies that she has been given a reasonable amount of time to consider the effect of the release before signing.

17. **NO ASSIGNMENT.** Bunnell specifically represents that she has not assigned or purported to assign or transfer to any third party any claim, known or unknown, past or present, against the other party or any portion of or any interest in any such claim, nor will she do so in the future.

18. **INTEGRATION AND COMPLETE AGREEMENT.** This Agreement sets forth the entire agreement between the parties regarding the subject matter hereof, and supersedes, voids and extinguishes any and all prior agreements or understandings between the parties with respect to the subject matter hereof.

19. **SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon and shall inure to the benefit of Bunnell, her heirs, executors, administrators and beneficiaries, and shall be binding upon and inure to the benefit of the Released Parties and their successors and assigns.

20. **AMENDMENT.** This Agreement may not be altered or modified except in writing signed by both Bunnell and the President of Corewell Health East.

21. **APPLICABLE LAW.** The parties agree and stipulate that Michigan law shall govern the enforceability and construction of this Agreement.

22. **EXECUTION BY COUNTERPARTS**. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, Jackilyn Bunnell has voluntarily signed this Settlement Agreement, Release of All Claims, Covenant Not to Sue and Confidentiality Agreement on the date set forth below.

**WITNESS**

______________________________

Dated: _________________, 2026

**Corewell Health**

By: _________________________

Its: _________________________

Dated: _________________, 2026

______________________________
Jackilyn Bunnell

Dated: _________________, 2026



Initial __

# EXHIBIT

# E

Gmail **Jackilyn Bunnell <j.vbunnell@gmail.com>**

## RE: Bunnell - Structured Settlement Language Package

1 message

**Ryan Paree** <rparee@millercohen.com> Tue, Sep 22, 2026 at 9:02 AM
To: Jackilyn Bunnell <j.vbunnell@gmail.com>
Cc: Keith Flynn <kflynn@millercohen.com>

Mrs. Bunnell,

I will not assist you in pursuing a settlement which attempts to go back on the waiver of claims. When we discussed the waiver clause, prior to settlement, I was clear that you were waiving any and all claims you might have against Corewell. This included any claims you might not realize you had. This issue was concluded at the settlement conference. Again – you had an obligation to specifically exempt these claims prior to settlement if that was a priority. It is too late for you to add this carve-out. Any argument to the contrary would be frivolous, and I am ethically unable to pursue frivolous arguments.

As I stated in my last email, I will not be adding the “jigsaw identify” clause to your contract. I need to make this clear: it is my professional opinion that the language you want to add would be self-defeating and weaken this clause, while accomplishing nothing. I am ethically obligated to not assist you in an action that I know will actively harm your legal interests. It is a bad idea, and I expect that any experienced and competent attorney would agree with me. If you insist on pursuing that language, you will have to do so on your own.

While I appreciate your zealous advocacy for yourself, I cannot and will not pursue arguments that I know to be legally indefensible, frivolous, or actively harmful to your stated interests. If you insist on pursuing those arguments, despite our advice to the contrary, we will have to withdraw as your counsel, and Corewell will file a Motion to Enforce the settlement. Please let me know by 5:00 PM today if you will agree to a settlement which includes the previously agreed to waiver and without the “jigsaw identify” clause.

Sincerely,

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

**From:** Jackilyn Bunnell <j.vbunnell@gmail.com>
**Sent:** Tuesday, September 22, 2026 7:02 AM
**To:** Ryan Paree <rparee@millercohen.com>
**Cc:** Keith Flynn <kflynn@millercohen.com>; Robert Fetter <rfetter@millercohen.com>; Richard Mack

<richardmack@millercohen.com>
**Subject:** Re: Bunnell - Structured Settlement Language Package

Ryan,

I want to begin by reiterating that I deeply appreciate and remain grateful for the extensive time, talent, and effort this firm invested in my case, particularly in securing our successful reversal at the Sixth Circuit Court of Appeals. However, I must reject your characterization of our past discussions and I do not agree with your version of the written record.

To answer your direct question: Yes, you have my authority to continue to negotiate the final settlement agreement as a lump sum without the structured settlement language, subject to the following non-negotiable safety protections being fully integrated into the contract text with the Defendant:

1. **Explicit Medical Malpractice Carve-Out:** Sections 2 and 4 must state point-blank that this release applies strictly to employment, FMLA, and economic civil claims, and explicitly excludes any past, present, or future personal claims for medical malpractice, medical negligence, personal injury, or hospital grievances for myself and my family.

2. **Integration of the 21 Individuals:** Section 10 must be updated to explicitly list the 21 specific individuals from my department that I emailed to this team yesterday at 12:36 PM (originally provided on July 24th) to safeguard my professional reputation against the ongoing, false productivity rumors.

3. **Patient Advocacy & Jigsaw Protection:** Section 10 must protect my right to engage in maternal healthcare advocacy, education, and patient awareness regarding my pregnancy, our birth experiences, and my daughter's condition. The contract text must explicitly state that sharing factual healthcare details without explicitly naming Corewell Health is permitted, even if an outside party is able to piece together ("jigsaw identify") who the provider or facility is.

4. **The Finalized "Letter":** I require a copy of the finalized "letter" to review before any documents are executed, ensuring all past inaccuracies and misspellings of my name have been fully corrected.

5. **Mathematical Correction:** Section 1.1 must be adjusted to correct the 3-cent error so corporate accounting does not reject the funding check (195,000.03).

My written records from June 25th and August 5th—weeks before today's conference—explicitly documented my consistent settlement priorities, my family's ongoing specialized medical care, and past injuries under Corewell's care. Your written confirmation this afternoon that this current draft waives my personal medical malpractice rights for past treatment is entirely unacceptable and cannot, for our family's safety, have my informed consent.

This litigation has been strictly confined to my statutory employment and FMLA claims, and at no point did I consent to expanding its scope to include a global release of personal medical liabilities. This resolution is not a "two-for-one" package. I already accepted a recovery drastically lower than the $350,000 baseline we prepared for heading into mediation. I was completely blindsided the night before mediation by the defense's manufactured argument trying to limit my recovery to part-time wages. Miller Cohen advised, it was a good argument, not that we absolutely have to drastically reduce our ask. This is despite the fact that I was a full-time employee terminated due to pregnancy and first denied for, then approved FMLA return while contingents filled my hours and then my job. During the mediation session itself, I was required by federal court rules to leave my phone and laptop in the car, and with my calculator battery unexpectedly dead, I was left entirely dependent on flawed Excel calculations. Under intense pressure from the Judge's stance on the part-time wage issue and your assertions that a jury would likely yield no better result, I accepted the $195,000 and was told the structured settlement language could be added in later as Ryan still said he was not familiar. Having compromised heavily on my employment damages under those conditions, I will absolutely not compromise on my family's medical safety, or advocacy.

As this firm has known throughout our six-year relationship, my daughter and I nearly died due to extensive medical errors during my traumatic birth experience in 2020. If Miller Cohen knew that a standard General Release would sweep those catastrophic medical liabilities into an employment settlement, you had a strict fiduciary duty to disclose that to me prior to mediation and my acceptance of a settlement. If Corewell wanted a waiver for medical negligence, that we have personally discussed during the last six years in multiple repeating instances where they appeared to be retaliatory towards my child, they were required to explicitly negotiate for it and provide separate, substantial compensation as I have previously stated to you.

Since the defendant stated today that they are *"working towards things on the back end and are cautiously optimistic"* regarding these remaining terms, you have my authority to continue negotiating with Corewell strictly to lock in these outstanding safety protections. Please forward Corewell's text updates and the separation letter as soon as they are received on the back end.

Mrs. Bunnell

On Mon, Sep 21, 2026 at 3:41 PM Ryan Paree <rparee@millercohen.com> wrote:

> Mrs. Bunnell,

Your email makes several material factual misrepresentations regarding the history of our settlement discussions, both in past communications and in what occurred at the status conference today. I had no authority to "let" Miles speak to the Judge, and Miles had no authority or ability to address the Judge's question, which was why this was not discussed at the settlement conference. I furthermore did not "actively shut out" your broker, your statement to the contrary is false. The Defendant's main argument was that they were unwilling to enter into a contract with a third party as part of this settlement, and there was nothing I could have said to establish otherwise. Everything provided by Miles indicates that this is a critical component of the structured settlement. I also am not responsible for the fact that Corewell's attorney did not talk to Miles. It is not within my power to alter that. We did not "sit in silence," I advocated for your position as best as I could, but as I have expressed to you on many occasions, it was a problematic position to take.

At no point prior to settlement did you ever, in any capacity, indicate to anyone at Miller Cohen that a structured settlement was critical to you, or even that it was a priority. Any claim to the contrary is false. You had previously *asked what a structured settlement was*, and my response was that I did not know and was unfamiliar with it. I have never – ever – assured you that structured settlement language could "be added on later," and such a sentiment is directly contrary to our previous communications in which you agree that I clearly expressed to you that I did not know enough about the concept to advise you on it.

To be clear: it was your obligation to express to the Judge, as the mediator, that a structured settlement with third party involvement was an essential part of the settlement. Frankly, I believe it is clear that you made that decision after settlement was reached. You were present with the Judge, and the Judge asked you directly, several times, if there was anything else. We discussed the concept of the essential terms of the settlement, both at the settlement conference and before the prior one with Judge Rashid. My recollection is furthermore that even the Judge discussed the idea of essential terms with you directly. I informed you that anything that was critical to your settlement needed to be raised at the settlement conference, it was your responsibility to speak up if there were essential terms which had not been discussed. That was your opportunity to state otherwise. Your failure to do so does not amount to negligence on our part. There has been no negligence in the handling of your settlement.

Going forward, my emails will focus on finalizing the settlement document. Most of your concerns regarding the settlement language are addressed in the revised settlement agreement that was sent today. The current language in Section 10 is as follows:

"Nothing in this Agreement shall restrict Plaintiff from sharing her own or her child's personal medical histories, so long as Plaintiff does not name Corewell or any of its affiliates."

Unless you are able to identify some way to read the current language that would create a problem where someone figures out through context that Corewell was the provider, I am not willing to include the "jigsaw identification" language you requested because I believe I would be negligent to do so. As I have explained to you before, such language is objectively weaker than the language in what I sent over. There is a legal idea that the inclusion of one thing is the exclusion of the other. The current language states, point blank, that it does not apply to your discussions of your medical history, so long as you do not *name* Corewell. I do not see how it could be possible this section to apply to a situation in which someone figures out that you were talking about Corewell. Including the language you have suggested creates the possibility that there are situations in which you could violate the non-disparagement provision by disclosing your medical history, even without naming the Defendant. It significantly weakens the contract language. Given how strongly you have expressed your concerns about being able to freely discuss your medical history, I am legally and ethically obligated to refuse your request. If you believe there is a weakness in the current language, I am willing to discuss making other modifications to achieve the desired result.

As both Keith and I have stated before: you have agreed to waive any claims you have against Beaumont/Corewell which pre-date the date of the settlement agreement. This includes any potential medical malpractice suits you might have against them for any past treatment. You did not waive any claims your daughter may have against them. You cannot add a carve-out for past medical malpractice claims at this point in time.

EXHIBIT 2

Gmail — Jackilyn Bunnell <j.vbunnell@gmail.com>

## RE: FW: Bunnell/Beaumont - Supplemental Discovery Responses

1 message

**Ryan Paree** <rparee@millercohen.com> — Wed, Sep 30, 2026 at 11:22 AM
To: Jackilyn Bunnell <j.vbunnell@gmail.com>
Cc: Keith Flynn <kflynn@millercohen.com>, Richard Mack <richardmack@millercohen.com>, Robert Fetter <rfetter@millercohen.com>

Mrs. Bunnell,

You are of course free to file your objection. Please do so as soon as possible. Local Rule 7.1(e)(1) sets a 14 day response window to all motions unless a specific window is set elsewhere.

However, as previously stated, it is our position that you agreed to a waiver of all claims, not those specific to the lawsuit. Accordingly, our belief is that arguments to the contrary would be frivolous, and we are ethically and legally bound to not assist in the furtherance of any arguments which we believe to be frivolous. Accordingly, we would be legally prohibited from objecting to the Defendant's motion to enforce the settlement agreement on the grounds you have given. We will not file any motion similar to the one you filed the other day, and we will not object to an attempt by the Defendant to enforce a waiver of all pre-settlement claims. If you decide to object to our withdrawal knowing that we will not assist you in that pursuit, that is your decision.

Sincerely,

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.

7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

**From:** Jackilyn Bunnell <j.vbunnell@gmail.com>
**Sent:** Wednesday, September 30, 2026 10:57 AM
**To:** Ryan Paree <rparee@millercohen.com>
**Cc:** Keith Flynn <kflynn@millercohen.com>; Richard Mack <richardmack@millercohen.com>; Robert Fetter <rfetter@millercohen.com>
**Subject:** Re: FW: Bunnell/Beaumont - Supplemental Discovery Responses

Dear Mr. Flynn and Mr. Paree,

I am in receipt of your email and the attached Motion to Withdraw as Counsel.

Please be explicitly advised that **I do not consent to your withdrawal**, and I will be formally filing my opposition with the Court.

Your motion incorrectly states that cooperation has become impossible. As I have repeatedly stated, I remain **100% cooperative, ready, and explicitly willing** to execute a workplace-only release today to fulfill the **$195,000.00 oral resolution** reached at mediation.

This firm is making a voluntary choice to attempt to abandon representation a mere five days before a strict court deadline, solely because I refuse to allow the defense to force unnegotiated pediatric medical waivers that endanger my minor child's TEFRA Medicaid status.

I will await Judge McMillion's scheduling order and formal handling of your motion.

Regards,
Jackilyn Bunnell

On Wed, Sep 30, 2026 at 10:15 AM Ryan Paree <rparee@millercohen.com> wrote:

Mrs. Bunnell,

Please find attached a copy of our Motion to Withdraw as Counsel, which is being filed today.

We will not be complying with your request to file a motion to enforce for the reasons previously stated.

Thank you,

**Ryan A. Paree**
Associate Attorney
Miller Cohen, P.L.C.
7700 Second Ave, Suite 335
Detroit, MI 48202
Phone: 313 964 4454 / Fax: 313 964 4490

MILLER COHEN, PLC
JUSTICE FOR WORKING PEOPLE

---

**From:** Jackilyn Bunnell <j.vbunnell@gmail.com>
**Sent:** Wednesday, September 30, 2026 1:29 AM
**To:** Ryan Paree <rparee@millercohen.com>; Keith Flynn <kflynn@millercohen.com>

<richardmack@millercohen.com>
**Subject:** Re: Bunnell - Structured Settlement Language Package

Ryan,

I want to begin by reiterating that I deeply appreciate and remain grateful for the extensive time, talent, and effort this firm invested in my case, particularly in securing our successful reversal at the Sixth Circuit Court of Appeals. However, I must reject your characterization of our past discussions and I do not agree with your version of the written record.

To answer your direct question: Yes, you have my authority to continue to negotiate the final settlement agreement as a lump sum without the structured settlement language, subject to the following non-negotiable safety protections being fully integrated into the contract text with the Defendant:

1. **Explicit Medical Malpractice Carve-Out:** Sections 2 and 4 must state point-blank that this release applies strictly to employment, FMLA, and economic civil claims, and explicitly excludes any past, present, or future personal claims for medical malpractice, medical negligence, personal injury, or hospital grievances for myself and my family.

2. **Integration of the 21 Individuals:** Section 10 must be updated to explicitly list the 21 specific individuals from my department that I emailed to this team yesterday at 12:36 PM (originally provided on July 24th) to safeguard my professional reputation against the ongoing, false productivity rumors.

3. **Patient Advocacy & Jigsaw Protection:** Section 10 must protect my right to engage in maternal healthcare advocacy, education, and patient awareness regarding my pregnancy, our birth experiences, and my daughter's condition. The contract text must explicitly state that sharing factual healthcare details without explicitly naming Corewell Health is permitted, even if an outside party is able to piece together ("jigsaw identify") who the provider or facility is.

4. **The Finalized "Letter":** I require a copy of the finalized "letter" to review before any documents are executed, ensuring all past inaccuracies and misspellings of my name have been fully corrected.

5. **Mathematical Correction:** Section 1.1 must be adjusted to correct the 3-cent error so corporate accounting does not reject the funding check (195,000.03).

My written records from June 25th and August 5th—weeks before today's conference—explicitly documented my consistent settlement priorities, my family's ongoing specialized medical care, and past injuries under Corewell's care. Your written confirmation this afternoon that this current draft waives my personal medical malpractice rights for past treatment is entirely unacceptable and cannot, for our family's safety, have my informed consent.

This litigation has been strictly confined to my statutory employment and FMLA claims, and at no point did I consent to expanding its scope to include a global release of personal medical liabilities. This resolution is not a "two-for-one" package. I already accepted a recovery drastically lower than the $350,000 baseline we prepared for heading into mediation. I was completely blindsided the night before mediation by the defense's manufactured argument trying to limit my recovery to part-time wages. Miller Cohen advised, it was a good argument, not that we absolutely have to drastically reduce our ask. This is despite the fact that I was a full-time employee terminated due to pregnancy and first denied for, then approved FMLA return while contingents filled my hours and then my job. During the mediation session itself, I was required by federal court rules to leave my phone and laptop in the car, and with my calculator battery unexpectedly dead, I was left entirely dependent on flawed Excel calculations. Under intense pressure from the Judge's stance on the part-time wage issue and your assertions that a jury would likely yield no better result, I accepted the $195,000 and was told the structured settlement language could be added in later as Ryan still said he was not familiar. Having compromised heavily on my employment damages under those conditions, I will absolutely not compromise on my family's medical safety, or advocacy.

As this firm has known throughout our six-year relationship, my daughter and I nearly died due to extensive medical errors during my traumatic birth experience in 2020. If Miller Cohen knew that a standard General Release would sweep those catastrophic medical liabilities into an employment settlement, you had a strict fiduciary duty to disclose that to me prior to mediation and my acceptance of a settlement. If Corewell wanted a waiver for medical negligence, that we have personally discussed during the last six years in multiple repeating instances where they appeared to be retaliatory towards my child, they were required to explicitly negotiate for it and provide separate, substantial compensation as I have previously stated to you.

Since the defendant stated today that they are *"working towards things on the back end and are cautiously optimistic"* regarding these remaining terms, you have my authority to continue negotiating with Corewell strictly to lock in these outstanding safety protections. Please forward Corewell's text updates and the separation letter as soon as they are received on the back end.

Mrs. Bunnell

On Mon, Sep 21, 2026 at 3:41 PM Ryan Paree <rparee@millercohen.com> wrote:

Mrs. Bunnell,

Your email makes several material factual misrepresentations regarding the history of our settlement discussions, both in past communications and in what occurred at the status conference today. I had no authority to "let" Miles speak to the Judge, and Miles had no authority or ability to address the Judge's question, which was why this was not discussed at the settlement conference. I furthermore did not "actively shut out" your broker, your statement to the contrary is false. The Defendant's main argument was that they were unwilling to enter into a contract with a third party as part of this settlement, and there was nothing I could have said to establish otherwise. Everything provided by Miles indicates that this is a critical component of the structured settlement. I also am not responsible for the fact that Corewell's attorney did not talk to Miles. It is not within my power to alter that. We did not "sit in silence," I advocated for your position as best as I could, but as I have expressed to you on many occasions, it was a problematic position to take.

At no point prior to settlement did you ever, in any capacity, indicate to anyone at Miller Cohen that a structured settlement was critical to you, or even that it was a priority. Any claim to the contrary is false. You had previously *asked what a structured settlement was*, and my response was that I did not know and was unfamiliar with it. I have never – ever – assured you that structured settlement language could "be added on later," and such a sentiment is directly contrary to our previous communications in which you agree that I clearly expressed to you that I did not know enough about the concept to advise you on it.

To be clear: it was your obligation to express to the Judge, as the mediator, that a structured settlement with third party involvement was an essential part of the settlement. Frankly, I believe it is clear that you made that decision after settlement was reached. You were present with the Judge, and the Judge asked you directly, several times, if there was anything else. We discussed the concept of the essential terms of the settlement, both at the settlement conference and before the prior one with Judge Rashid. My recollection is furthermore that even the Judge discussed the idea of essential terms with you directly. I informed you that anything that was critical to your settlement needed to be raised at the settlement conference, it was your responsibility to speak up if there were essential terms which had not been discussed. That was your opportunity to state otherwise. Your failure to do so does not amount to negligence on our part. There has been no negligence in the handling of your settlement.

Going forward, my emails will focus on finalizing the settlement document. Most of your concerns regarding the settlement language are addressed in the revised settlement agreement that was sent today. The current language in Section 10 is as follows:

"Nothing in this Agreement shall restrict Plaintiff from sharing her own or her child's personal medical histories, so long as Plaintiff does not name Corewell or any of its affiliates."

Unless you are able to identify some way to read the current language that would create a problem where someone figures out through context that Corewell was the provider, I am not willing to include the "jigsaw identification" language you requested because I believe I would be negligent to do so. As I have explained to you before, such language is objectively weaker than the language in what I sent over. There is a legal idea that the inclusion of one thing is the exclusion of the other. The current language states, point blank, that it does not apply to your discussions of your medical history, so long as you do not *name* Corewell. I do not see how it could be possible this section to apply to a situation in which someone figures out that you were talking about Corewell. Including the language you have suggested creates the possibility that there are situations in which you could violate the non-disparagement provision by disclosing your medical history, even without naming the Defendant. It significantly weakens the contract language. Given how strongly you have expressed your concerns about being able to freely discuss your medical history, I am legally and ethically obligated to refuse your request. If you believe there is a weakness in the current language, I am willing to discuss making other modifications to achieve the desired result.

As both Keith and I have stated before: you have agreed to waive any claims you have against Beaumont/Corewell which pre-date the date of the settlement agreement. This includes any potential medical malpractice suits you might have against them for any past treatment. You did not waive any claims your daughter may have against them. You cannot add a carve-out for past medical malpractice claims at this point in time.