**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JACKILYN BUNNELL,<br><br>PLAINTIFF,<br><br>VS.<br><br>WILLIAM BEAUMONT HOSPITAL,<br><br>DEFENDANT. | ) | Case No.: 2:22-cv-12414<br>Hon. Brandy R. McMillion<br>United States District Judge |

**ORDER GRANTING PLAINTIFF COUNSEL'S MOTION TO WITHDRAW (ECF NO. 52), DEFENDANT'S MOTION TO ENFORCE SETTLEMENT (ECF NO. 54), AND PLAINTIFF'S MOTION FOR LEAVE TO FILE OBJECTIONS (ECF NO. 57)**

Before the Court are several interrelated motions: Plaintiff Counsel's Motion to Withdraw (ECF No. 52), Defendant's Motion to Enforce Settlement (ECF No. 54), and Plaintiff's *pro se* Motion for Leave to File Objection to Defendant's motion (ECF No. 57). The Court has reviewed all the motions, supporting briefs, and the record. *See* ECF Nos. 52, 54, 55, 57, 58, 59. Based on that review, the Court has determined that a hearing is unnecessary and the Court can rule on the record before it. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court **GRANTS** all three motions.

* * * *

**Background**

Plaintiff Jackilyn Bunnell ("Plaintiff" or "Bunnell") filed this sex discrimination action against her former employer, Defendant William Beaumont Hospital ("Defendant" or "Beaumont"), alleging violations of both federal and state law for pregnancy discrimination after giving birth and being terminated during the COVID-19 pandemic. *See generally* ECF No. 13. The Court granted summary judgment in Beaumont's favor on all claims. ECF No. 35. Bunnell appealed. ECF No. 38. The Sixth Circuit Court of Appeals affirmed in part and reversed in part this Court's ruling. *See* ECF No. 40. It affirmed dismissal of Bunnell's disability-discrimination and retaliation, pregnancy-discrimination-based retaliation, and FMLA retaliation claims and reversed as to her pregnancy-discrimination and FMLA interference claims. *Id.* at PageID.2218.

On remand, the Court held a Settlement Conference with the parties in an effort to resolve the remaining claims short of trial. *See* ECF No. 45. The parties came to an agreed resolution, and the Court instructed them to reduce the terms to a written agreement and then file final dismissal paperwork with the Court on or before July 27, 2026. However, that never happened. On September 21, 2026, the Court held a status conference with the parties. The parties were again instructed to submit dismissal paperwork to the Court, or Defendant could submit a motion to enforce the settlement no later than October 5, 2026.

**Plaintiff Counsel's Motion to Withdraw**

On September 30, 2026, Plaintiff's Counsel, Miller Cohen, submitted a motion to the Court seeking to withdraw as counsel for Bunnell. *See* ECF No. 52. Counsel based its request to withdraw on Rule 1.16(b) of the American Bar Association Rules of Professional Conduct, which permits withdrawal when:

> (4) the client insists on taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;
>
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
>
> (7) other good cause for withdrawal exists.

ECF No. 52 at PageID.2303. Counsel represented that during the course of the matter, there was a "breakdown in the attorney/client relationship between Plaintiff and her legal counsel, such that cooperation between client and counsel has become increasingly and unreasonably difficult." *Id.* They explained that Bunnell had filed her own *pro se* motions with the Court on two separate occasions after the parties reached a settlement, and in both motions accused counsel of impropriety. *Id.* More importantly, counsel noted that, as Bunnell disclosed, counsel fundamentally disagreed with her expectations for the final settlement, and they could not "ethically represent her in her stated goals." *Id.*

Plaintiff opposes this Motion. *See generally* ECF No. 55. She bases her opposition on her position on the settlement, which includes "protection of her minor child and the structural integrity of the litigation." *Id.* at PageID.2419. However, these appear to be the very issues counsel disagrees with and the basis for the breakdown of the attorney-client relationship. Defendant has no opposition to allowing counsel to withdraw. ECF No. 52, PageID.2304.

Under the Court's local rules, an attorney may withdraw or be substituted for only on order of the Court. E.D. Mich. LR 83.25(b)(2). The Michigan Rules of Professional Conduct provide circumstances under which an attorney may withdraw, and those mirror the reasons permitted by the American Bar Association's Rules of Professional Conduct (as cited by Plaintiff's counsel). *See* Mich. R. Prof. Conduct 1.16. Here, the Court finds that the attorney-client relationship has broken down, making continued representation inappropriate. Not only has Plaintiff filed several *pro se* motions (including her objection to the motion to enforce settlement – which is the basis of the breakdown), but also continued representation would place counsel in a position in which they would be forced to make unethical representations if they proceeded as Bunnell has instructed. The Court finds sufficient cause to grant their request to withdraw. It is clear that counsel's ability to provide effective representation has been impaired; therefore, the Court will grant counsel's Motion to Withdraw (ECF No. 52).

**<u>Defendant's Motion to Enforce Settlement (ECF No. 54) and Plaintiff's Motion for Leave to File an Objection (ECF No. 57)</u>**

That leaves Defendant's request to enforce the settlement and Plaintiff's related motion to file an objection to that request. As an initial matter, the Court will grant Plaintiff's Motion for Leave to File an Objection (ECF No. 57) and deem it as Plaintiff's *pro se* response to Defendant's motion. Plaintiff's counsel also filed a Reply to Plaintiff's Response to the Motion to Enforce Settlement. ECF No. 59. That reply primarily relates to attorneys' fees (*see infra*).

Defendant argues that after hours of negotiations conducted during a June 11, 2026 Settlement Conference with the Court, the parties reached an agreement that includes all of the material terms, including payment terms and a full release of all claims. ECF No. 54, PageID.2310. The parties were to prepare a settlement agreement that memorialized the terms of settlement. *Id.* at PageID.2311. Despite receiving those instructions from the Court, Plaintiff filed an Emergency Notice of Client Settlement Dispute and Evidence of Modification (ECF No. 46) in which she accused her attorneys of misrepresenting the amount of settlement proceeds she would receive. That filing was withdrawn (ECF No. 48), and the parties proceeded with preparation of the settlement documents. ECF No. 54, PageID.2311.

On September 21, 2026, the Court held a status conference with the parties because Plaintiff insisted on a structured settlement to resolve the claims. The Court acknowledged that this was never part of the settlement terms and instructed the

parties to finish negotiating the settlement agreement and submit dismissal paperwork no later than October 5, 2026. ECF No. 54, PageID.2312. The parties again went back to drafting settlement documents, and Plaintiff then raised an issue with the scope of the release of claims. *Id.* Plaintiff wanted the scope of the release to be narrowed from "all claims" to only "employment-related claims" so that she could "carve out" claims of medical malpractice relating to her minor child. *Id.*

On September 28, 2026, despite being represented by counsel, Plaintiff filed a *pro se* Emergency Motion to Enforce the Employment Scope of the Resolution and to Strike Defendant's Unauthorized Pediatric Malpractice and Assault Waivers. The Court struck that Motion because Plaintiff was represented by counsel. ECF No. 51. Nonetheless, the substance of that motion is virtually identical to the claims Plaintiff raises in objection to Defendant's motion to enforce the settlement. *See* ECF No. 57. Essentially, Plaintiff argues that she cannot contractually waive her minor child's rights and that executing a full release of claims would strip her child of TEFRA Medicaid health insurance benefits. ECF No. 57, PageID.2474-2482. She further asserts that there was never a meeting of the minds, that other administrative bars apply to the waiver of claims, that the proposed language conflicts with the factual underpinnings of claims related to her minor child, and that the current proposed language creates tax consequences she did not anticipate. *Id.* at PageID.2482-2486. None of these arguments hold merit.

First, the Court is not convinced that execution of the settlement agreement poses any risk to Plaintiff's child's TEFRA benefits. As Defendant states, Plaintiff's child is not a party to the settlement agreement; any claims the child may have against Defendant would be unaffected by Plaintiff's general release of claims. ECF No. 58, PageID.2557. Nonetheless, those issues were never raised during the settlement negotiations, and Plaintiff agreed to a full release of claims.

Additionally, Plaintiff's attempt to state there was never a meeting of the minds is disingenuous. Plaintiff first raised the issue of revising the settlement terms by injecting a structured settlement. When that fell through because the Court discussed it with the parties and noted it was never part of the settlement terms, Plaintiff abandoned that theory and then raised the issue of limiting the release of claims. At no time did Plaintiff ever raise with the Court any issues relating to TEFRA rights, malpractice claims, or any other claims against Defendant, until after the Court foreclosed the structured settlement.

Further, to the extent that Plaintiff argues that she has uncovered a massive "Medicaid fraud scheme at Defendant's [health] system" which is currently under investigation (ECF No. 57, PageID.2485), this does not in any way limit her ability to execute a complete waiver of claims.

Moreover, the alleged tax consequences that Plaintiff seeks to avoid are beyond the scope of the parties' agreement. Plaintiff initially raised this issue when

trying to force a structured settlement as a term of the agreement. But as Defendant notes, the agreement of the parties was to allocate 90% of the settlement proceeds to alleged emotional distress damages, not subject to income tax withholdings and reported via a Form 1099, and the remaining 10% should be treated as alleged lost wages, subject to tax withholdings, after attorneys' fees are deducted from the settlement proceeds. ECF No. 57, PageID.2486-2487. This is precisely what the proposed settlement agreement does. Plaintiff's concerns with issuance of a 1099 to her and counsel are without legal merit, as it is required when a portion of the settlement is owed to counsel as attorney's fees (which, as discussed below, the court finds to be the case here). *See* ECF No. 58, PageID.2558 (citing *Comm'r v. Banks,* 543 U.S. 426, 429-30 (2005) (explaining that the portion of a settlement paid to the plaintiff's attorney as a contingent fee is includable in the plaintiff's gross income and is therefore taxable), *McClusky v. Century Bank*, 598 F. App'x 383, 387-89 (6th Cir. 2015) (affirming that a defendant's issuance of a Form 1099 in a settlement context is a legitimate reporting obligation and does not itself give rise to liability)).

As the Court noted, the parties' agreement was a full waiver of all claims and a complete release of any liability. Quite simply, full means full and any means any. Therefore, Plaintiff is not entitled to avoid settlement because she now seeks to limit the scope of the release. That was never the parties' intention, and because the Court was involved in the hours of negotiations between the two, it can aptly state that a

full waiver of all claims was a material term of the agreed settlement.[1] The parties never contemplated limiting the release to employment-related claims or including a carveout for medical malpractice claims.

Finally, to the extent that Plaintiff seeks to add additional terms to the parties' agreement, the Court will not entertain her attempt to keep moving the ball. As Defendant notes, Plaintiff's Response adds further terms that were never a part of the parties' agreement:

> 1) "striking or modifying Paragraph 3 ('Affirmations') to explicitly ensure that Plaintiff is not required to waive, withdraw from, or cease cooperating with active state licensing, civil, or Medicaid fraud whistleblower investigations involving the hospital system;" 2) revising the language of the letter relating to her separation from employment to identify her as an Ultrasonographer III (an inaccurate designation of her position) and to insert language stating that the layoff was not a reflection of job "productivity" (despite the letter already stating that the layoff was not a reflection of Plaintiff's "skills or job performance"); 3) requiring that a "separate, independent third-party contact number – not the Royal Oak Human Resources department – handle all future employment verification inquiries;" and 4) adding 21 newly identified individuals to the mutual non-disparagement provision, many of whom have never previously been identified in this lawsuit via Plaintiff's Witness List, depositions, or written discovery.

ECF No. 58, PageID.2559-2560.

---

[1] Communications between Plaintiff and her counsel further support this. *See* ECF No. 55, PageID.2431 ("If you refuse to sign a settlement agreement in-keeping with what was agreed to during the settlement conference (including a full release of all claims), we will have no other choice. We will file a motion to withdraw. We know what we told you. We know what was said. You were fully aware of what a full release of all claims entailed. We cannot and will not pursue a frivolous or dishonest position. At that time, we will file a motion to withdraw.")

Because these terms were not negotiated as part of the settlement reached during the Settlement Conference with the Court on June 11, 2026, they will not be included in the final terms of settlement. Consequently, the Court has reviewed the Defendant's proposed Settlement Agreement (ECF No. 54-2) and believes that it fully represents the parties' agreement and is sufficient to memorialize the terms reached at the Settlement Conference.

**Attorneys' Fees**

The fees of both Plaintiff's counsel and Defense counsel have been brought to the attention of the Court. First, Defense counsel requests that Plaintiff pay the fees associated with having to file the motion to enforce settlement. ECF No. 54, PageID.2332. While this motion may have been filed out of the necessity to enforce the terms of the parties' agreement, the Court does not find that was so substantially unjustified as to warrant fees, and therefore the request is denied.

However, Plaintiff's request that she not have to pay the fees of Miller Cohen, despite what she admits was "extensive" work performed by the firm, is without merit. Miller Cohen filed an Attorney Lien concurrent with filing its motion to withdraw. *See* ECF No. 53. That lien is attached to the proceeds of any settlement in this matter. *Id.* at PageID.2306. In response to Defendant's motion to enforce the settlement, Plaintiff includes an entire section in her pro se response seeking to invalidate the attorneys' lien. *See* ECF No. 57, PageID.2488-2492. As Miller Cohen

correctly points out, this was not the proper pleading in which to address the lien. *See* ECF No. 59, PageId.2563; *see also* E.D. Mich. LR 7.1(i). However, because Plaintiff is proceeding *pro se,* the Court will address the merits of her request.

Plaintiff argues that the Court should deny Miller Cohen's attorneys' fees because "the explicit terms of the contract drafted by the firm do not provide a basis for an hourly fee recovery following an attorney-initiated withdrawal." ECF No. 57, PageID.2488. She cites the firm's retainer agreement, Michigan law on contingency fee arrangements, and Michigan Court Rules to argue that Miller Cohen is not entitled to payment due to its requested withdrawal. *Id.* at PageID.2488-2492. The Court disagrees.

First, as Miller Cohen states, nothing before the Court states that counsel for Plaintiff cannot recover attorney's fees in the event they withdraw from representation. ECF No. 59, PageID.2564. Indeed, the language Plaintiff cites allows counsel to withdraw for any reason it deems sufficient and, upon withdrawal, cooperate in the transition to a successor attorney without charging a fee for cooperating with new counsel. ECF No. 57, PageID.2488. This does not mean they are not entitled to the fees they incurred up to the transition.

Second, Plaintiff cites Michigan law that establishes that "when an attorney voluntarily withdraws from a contingent-fee contract without a contractually or ethically approved cause, the attorney completely forfeits any right to compensation

or a lien." ECF No. 57, PageID.2489 (citing *Plunkett & Cooney, PC v. Capitol Bancorp, LTD.*, 212 Mich. App. 325, 331 (1995) and *Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 488 (1975)). Here, Miller Cohen had an ethically approved cause for withdrawal. As stated above, continued representation would have placed the firm in a position that required unethical representations to the Court if they proceeded as Plaintiff desired. That makes this case directly contrary to the case law Plaintiff cites. Moreover, as Defendant points out, in *Ambrose*, the Court found plaintiff's counsel was entitled to attorneys' fees, where their request for withdrawal stemmed from the client's unreasonable position and refusal to follow the law and court orders. ECF No. 59, PageID.2563. In *Ambrose*, similar to here, the client rejected a settlement offer and refused to comply with legal obligations over the advice of counsel. 65 Mich. App. at 491-492. The Court found that the attorney correctly sought withdrawal and was entitled to fees for work done. *Id.* at 488-491. That is strikingly similar to the facts here and supports denying Plaintiff's request to invalidate Miller Cohen's attorney lien.

Finally, neither the Michigan Court Rule cited by Plaintiff (MCR 8.121(F)) nor the Professional Conduct Rule (MRPC 1.5(c)) support her position that she should not have to pay Miller Cohen for its services. Plaintiff argues that these rules require that Miller Cohen provide her with a countersigned, fully executed copy of her retainer agreement for it to be enforceable. ECF No. 57, PageID.2491-2492.

Neither of them do so. MCR 8.121 simply states that contingent fee agreements must be in writing and that a copy be provided to the client; it includes nothing about signature or the requirement that it be signed to be enforceable. *See* MCR 8.121(F). Similarly, MRPC 1.5(c) states,

> A contingent-fee agreement shall be in writing and shall state the method by which the fee is to be determined. Upon conclusion of a contingent-fee matter, the lawyer shall provide the client with a written statement of the outcome of the matter and, if there is a recovery, show the remittance to the client and the method of its determination.

*Id.* Again, the rule includes nothing about a signature being required for enforceability.

Consequently, the Court finds that Miller Cohen is entitled to its fees up through the timing of its Motion to Withdraw, and the attorney lien can be imposed on the settlement proceeds.

* * * *

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Counsel's Motion to Withdraw (ECF No. 52) is **GRANTED**. Miller Cohen is terminated as counsel of record; however, Miller Cohen is entitled to its attorneys' fees up to and through the timing of its motion to withdraw; and the attorney lien can be imposed on the settlement proceeds.

**IT IS FURTHER ORDERED** that Defendant's Motion to Enforce Settlement (ECF No. 54) is **GRANTED**. Plaintiff shall execute the Settlement

Agreement, Release of All Claims, Covenant Not to Sue and Confidentiality Agreement (ECF No. 54-2) no later than close of business on **Wednesday, November 4, 2026**. Defendant's request for fees relating to said motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant shall file a Status Report with the Court, no later than **Friday, November 20, 2026**, informing the Court of the status of settlement.

**IT IS FURTHER ORDERED** that the motion hearing set for **Tuesday, November 3, 2026,** is **CANCELLED**.

***Failure to comply with this order may result in Plaintiff being held in contempt.***

**IT IS SO ORDERED.**

Dated: November 2, 2026
Detroit, Michigan

s/Brandy R. McMillion
Brandy R. McMillion
United States District Judge